The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Richard J. MOSSMANN, Defendant–
Appellant.

No. 98CA1973.

Colorado Court of Appeals,
Div. III.

March 16, 2000.

Rehearing Denied May 4, 2000.

Certiorari Denied Jan. 29, 2001.

&#8986;814(8)

641.10(1)

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Kim L. Montagriff, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Cynthia Mardian, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge TAUBMAN.

Defendant, Richard J. Mossmann, appeals the judgment of conviction entered on a jury verdict finding him guilty of violation of custody. We reverse and remand for a new trial.

In April 1995, the defendant's ex-wife was granted sole legal custody of their daughter. Defendant was permitted only supervised visitation with his daughter. On May 23, 1997, when the daughter was ten years old, defendant took her from her home. In July 1997, the police received information that defendant and his daughter were in California. On January 10, 1998, officers found defendant in California and arrested him. His daughter was in his custody at the time

of the arrest. Defendant was later convicted of two counts of violation of custody and sentenced to two concurrent four and one-half year sentences in the Department of Corrections. This appeal followed.

## I. Exclusion of Evidence and Refusal to Give Instructions

Defendant contends that the trial court abused its discretion in refusing to allow him to present certain evidence in support of his affirmative defense—his fear that his daughter was in danger while in the custody of her mother. We agree with defendant that the trial court abused its discretion, in part, in excluding certain evidence, and that the exclusion of such evidence led to the incorrect denial of defendant's request for an affirmative defense instruction.

When determining whether to admit evidence of an affirmative defense, a trial court has broad discretion to decide whether tendered evidence is relevant and admissible under CRE 401. Therefore, the trial court's decision will not be reversed absent an abuse of discretion. *People v. Tippett*, 733 P.2d 1183 (Colo.1987).

An affirmative defense to violation of custody is that the "offender reasonably believed that his conduct was necessary to preserve the child from danger to his welfare." Section 18-3-304(3), C.R.S.1999. However, the evidence in support of such an affirmative defense may be limited to defendant's state of mind at or shortly before the time he took his daughter. *People v. Tippett, supra*, 733 P.2d at 1191.

Here, defendant filed a notification of affirmative defense, asserting that he had taken his daughter to protect her after she revealed to him that his ex-wife and another man were physically, mentally, and sexually abusing her. Defendant further alleged that, at that time, his ex-wife and the other man were living together in violation of a restraining order which had been entered to protect his daughter.

### A. State of Mind Evidence

On appeal, defendant argues, *inter alia*, that the trial court abused its discretion in excluding the testimony of two witnesses who, according to defendant's offer of proof, would have testified that his ex-wife and the other man were living together in violation of the restraining order and that his daughter had been abused in the past. We agree.

The trial court rejected defendant's offer of proof with respect to one witness who was apparently a family therapist for the other man and his family. Defendant made an offer of proof that this therapist would testify that his daughter was in danger and that his ex-wife and the other man had been living together for a long time. The trial court rejected this offer of proof on the ground that the witness' testimony would be hearsay.

The trial court rejected, without explanation, defendant's offer of proof with respect to a second witness, a Denver social worker. According to defendant, that witness would have verified that his daughter had been abused and that his ex-wife and the other man were living together in violation of the restraining order.

Although CRE 801 and 802 provide for the exclusion of hearsay evidence, where statements are offered, not to prove the truth of the matter asserted, they are admissible as non-hearsay. *People v. Lyles*, 186 Colo. 302, 526 P.2d 1332 (1974) (out-of-court statements not offered for truth, but only to show defendant's state of mind, were admissible as non-hearsay). Under this rule, therefore, the evidence of the two excluded witnesses should have been permitted. Had they testified in accord with defendant's offer of proof, they would have substantiated his affirmative defense that he had taken his daughter from the custody of his ex-wife because he believed his daughter was being abused while living with his ex-wife and the other man, who had been legally restrained from having any contact with his daughter.

As discussed below, the submission of such evidence, together with other evidence submitted at trial, would have been sufficient to warrant the granting of defendant's requested affirmative defense instruction.

### B. Affirmative Defense Instruction

Defendant also asserts the trial court erred in refusing to give a jury instruction regarding his affirmative defense. Again, we agree.

■ A defendant is entitled to a jury instruction stating an affirmative defense if there is evidence presented to support such a defense, regardless of how improbable or unreasonable the defense might be. *People v. Fuller*, 781 P.2d 647 (Colo.1989). If, however, a defendant's theory of the case is already embodied in other instructions, the defendant is not entitled to have the theory of the case reiterated separately. *People v. Cole*, 926 P.2d 164 (Colo.App.1996). Whether sufficient evidence has been admitted to support the instruction is generally a decision for the trial court judge. *Lybarger v. People*, 807 P.2d 570 (Colo.1991).

■ Here, the trial court declined to give defendant's requested affirmative defense instruction based upon § 18–3–304(3). As noted, that statute provides that it is an affirmative defense to the charge of violation of a custody order that the defendant "reasonably believed that his conduct was necessary to preserve the child from danger to his welfare...."

The trial court's ruling was based on its determination that no evidence had been presented that defendant reasonably believed that his daughter was in danger either from her mother or from the other man. On appeal, defendant contends that he presented sufficient evidence to support his affirmative defense. He asserts that the guardian ad litem (GAL) testified about defendant's concerns about his ex-wife and the other man, and that defendant had provided information to the GAL which had led to the issuance of a restraining order against the other man. Defendant also presented testimony through the GAL that his ex-wife had at some time admitted to abusing the daughter.

Additionally, the court admitted into evidence the stipulated permanent restraining order, dated April 28, 1994, concerning defendant's ex-wife and the other man. That restraining order permanently restrained and enjoined the other man from having any direct or indirect contact with defendant's daughter, and further provided that defendant's ex-wife would prevent any such contact. The trial court also admitted a motion filed in the dissolution of marriage proceeding in February 1998 by defendant's ex-wife asking the court to vacate that restraining order against the other man. Taken together, those documents indicate that the restraining order against the other man was in effect at the time defendant took his daughter from his ex-wife's custody.

This evidence, together with evidence which would have been provided by the two excluded witnesses, as related in defendant's offer of proof, would have been sufficient to warrant the granting of an affirmative defense instruction. Such evidence would have been sufficient to establish defendant's affirmative defense that he took his daughter because he reasonably believed there was a risk to her welfare. Because defendant was denied the opportunity to present such affirmative defense, the cause must be reversed and remanded for a new trial.

### C. Defendant's Theory of the Case Instruction

We also agree with defendant's contention that the trial court's theory of the case instruction was an insufficient substitute for defendant's tendered affirmative defense instruction.

■ An affirmative defense instruction is one in which the defendant admits the doing of the act charged but seeks to justify, excuse, or mitigate it. *People v. Huckleberry*, 768 P.2d 1235 (Colo.1989). If an affirmative defense is established, it acts as a complete bar to conviction of the offense charged. *Rowe v. People*, 856 P.2d 486 (Colo.1993).

■ Here, to give the defendant the benefit of the doubt, the court gave a theory of the case instruction stating that it was the defendant's claim that he had to violate the custody order in this case to remove his daughter from a situation which was endangering her health and safety.

Although this instruction is similar to the language contained in defendant's proposed affirmative defense instruction, it was not given in the form of an affirmative defense instruction. There was no instruction to the jurors that if they found that the defendant violated the custody order to remove his daughter from a situation that was endangering her health and safety, they should find the defendant not guilty. Thus, even with the trial court's theory of the case instruction, the jurors could have believed that defendant was acting to remove his daughter from a situation threatening her health and safety, but, nevertheless, should be found guilty because he had violated a custody order.

Accordingly, the trial court incorrectly gave a theory of the case instruction instead of defendant's proposed affirmative defense instruction.

Because they may arise on retrial, we address the other issues raised by defendant.

## II. Discharge of Public Defender

Defendant contends the trial court erred in failing to advise him of the consequences of discharging the public defender who was representing him. We disagree.

On appeal, when a defendant asserts that an in-court waiver of the right to counsel was invalid, the prosecution must establish a prima facie case that the waiver was voluntary, knowing, and intentional. After the prosecution has met its burden, a defendant may overcome that burden by presenting evidence from which it could reasonably be inferred that the waiver was not voluntary, knowing, or intentional. *People v. Arguello*, 772 P.2d 87 (Colo.1989).

"A trial court's determination that a defendant waived the constitutional right to counsel will be upheld if the record affirmatively establishes that the defendant knowingly and intelligently waived that right." *People v. Arguello, supra*, 772 P.2d at 93. Any doubts regarding the waiver must be determined in defendant's favor. A waiver may be express or implied.

A request for new counsel is not ordinarily a waiver of the right to counsel. However, an unreasonable request or a request without good cause may lead to a waiver. Therefore, when an indigent defendant expresses dissatisfaction with counsel, the court must inquire as to the reasons for dissatisfaction. Good cause includes a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict. If such good cause exists, the court must substitute new counsel. However, the defendant must have "some well founded reason for believing that the appointed attorney cannot or will not completely represent him." *People v. Arguello, supra*, 772 P.2d at 94.

Defendant only has a right to competent representation, and therefore does not have the right to demand a particular attorney. "The right to counsel ... does not necessarily include a meaningful attorney-client relationship." *People v. Arguello, supra*, 772 P.2d at 92. If the trial court determines that good cause does not exist, the court can insist that the defendant choose between continued representation and appearing *pro se*. Therefore, the court must give the defendant a "clear choice" between counsel and a waiver.

After being given such a choice, a defendant's refusal without good cause to proceed with able counsel constitutes a voluntary waiver. However, the court must still determine if defendant's waiver was knowing and intelligent.

In *Arguello*, the supreme court articulated guidelines for determining if a defendant's waiver was knowing and intelligent. Most importantly, a reviewing court will examine the on-the-record advisement, as well as the totality of the circumstances in the whole record, to ascertain the validity of the waiver. For instance, "a defendant may be found to have waived his right to counsel by his own disruptive or uncooperative conduct." *People v. Smith*, 881 P.2d 385 (Colo. App.1994).

Here, defendant asserted that he wanted to discharge his public defender because he believed that the public defender

was allied with the district attorney and because he had not had contact with the public defender for over a month. The judge rejected defendant's contentions, pointing out that the public defender was an experienced attorney. The trial court then advised defendant that he could choose between representing himself and hiring counsel. The court also advised defendant that "where a person is indigent, then I can appoint a public defender."

On appeal, defendant does not contest the trial court's determination that he did not have good cause for discharging his public defender. Rather, he limits his contention to an assertion that the trial court did not advise him as to the consequences of discharging his public defender and that he had a clear choice between proceeding with appointed counsel or no counsel at all. We disagree.

The above advisement by the trial court made clear to defendant that he could proceed on his own, hire a private attorney, or seek again to have a public defender represent him. On this basis, we conclude that the advisement was sufficient and thus, that the trial court did not abuse its discretion in determining that defendant's waiver of his right to counsel was voluntary.

Defendant further contends that his waiver of the right to counsel was not knowing and intelligent because the trial court did not conduct the specific colloquy suggested by the supreme court and set forth in the appendix in *People v. Arguello, supra*. We are not persuaded.

Although the People concede that the trial court did not conduct a specific colloquy with the defendant as contemplated by *Arguello*, the absence of such colloquy does not automatically result in the conclusion that defendant's waiver of his right to counsel was not knowing and intelligent. Here, defendant does not suggest that he was unaware of the charges against him, his right against self-incrimination, or his right to counsel. At one point, the trial court commented to defendant concerning his demonstrated lack of awareness of trial procedure by indicating his intent to raise an affirmative defense. However, overall, de-

fendant acted appropriately at trial by raising hearsay objections and requesting bench conferences regarding disputed evidentiary issues. Defendant also demonstrated that he was aware of possible defenses and how to raise them. Defendant further demonstrated his understanding of the right to compel witnesses by preparing numerous subpoenas to gather information and to require the attendance of witnesses at trial.

Finally, we note that defendant continued to insist on representing himself even after the trial court urged him to reconsider his decision and have an experienced attorney represent him in this case.

Accordingly, under the totality of the circumstances, the trial court did not abuse its discretion in concluding that defendant knowingly, voluntarily, and intelligently waived his right to counsel. *See People v. Smith, supra* (in rare cases, a defendant's waiver of right to counsel will be upheld even where colloquy contemplated by *Arguello* has not been undertaken).

## III. Denial of Motion for Investigators

Defendant next asserts the trial court erred in failing to appoint investigators to assist him with trial preparation. We are not persuaded.

The decision to grant or deny a motion to provide investigatory services to an indigent defendant in a criminal case is within the sound discretion of the trial court. However, where the defendant cannot show that such services are reasonable, necessary, or in any way helpful to the defense, the trial court is not required to grant a motion requesting such services. *Brown v. District Court*, 189 Colo. 469, 541 P.2d 1248 (1975).

Here, defendant contended that two investigators were necessary to assist him in interviewing witnesses because he was incarcerated pending trial. However, the trial court ordered that defendant be allowed to make telephone calls to a number of prospective witnesses. The trial court also allowed defendant to gather evidence to assist in his trial preparation through serving numerous subpoenas. Defendant does not allege how

or why these measures were insufficient to enable him to obtain information that he might otherwise have obtained through an investigator.

Under these circumstances, we conclude that the trial court did not abuse its discretion in denying defendant's request for the appointment of investigators.

## IV. Evidentiary Rulings

Defendant argues that the trial court abused its discretion in excluding certain other evidence. We disagree.

■ First, we reject defendant's contention that the trial court abused its discretion in not allowing defendant to question his daughter's GAL about his ex-wife's fitness as a parent at or before April 20, 1995, more than two years before defendant took his daughter to California. The trial court concluded that much of that evidence had been considered and rejected in defendant's dissolution of marriage proceeding. Because of the remoteness and marginal relevance of such evidence, the trial court did not abuse its discretion in so limiting the evidence of his ex-wife's fitness as a custodial parent.

■ Second, the trial court limited defendant's presentation of evidence as to his state of mind to the three-week period before he took his daughter to California. Such temporal limitation was consistent with the guidelines established by the supreme court in *People v. Tippett, supra.* Thus, there was no abuse of discretion in this regard.

Finally, because, on retrial, defendant may be able to present evidence that his ex-wife and the other man were living together in violation of a restraining order, the trial court may reconsider whether to admit evidence of the other man's alleged misdemeanor conviction for child abuse.

\* Justice MARTINEZ would grant as to the following issues:

Whether the court of appeals, in contravention of *Stone v. People*, 485 P.2d 495 (Colo. 1971), erred by concluding that the police officer's "stop" order did not constitute a "seizure" for constitutional purposes.

The judgment is reversed, and the cause is remanded for a new trial consistent with this opinion.

Judge JONES and Judge NEY concur.