The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

John Thomas BEILKE, Defendant–Appellant.

No. 07CA0137.

Colorado Court of Appeals, Div. II.

June 25, 2009.

John W. Suthers, Attorney General, Co-relle M. Spettigue, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Natalie Chalabi, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, John Thomas Beilke, appeals the judgment of conviction entered on a jury verdict finding him guilty of violating a custody order by taking his minor daughter to Australia with the intent to permanently reside there, contrary to restrictions contained in the order. Defendant argues that the trial court reversibly erred when it: (1) limited the evidence he could introduce related to his affirmative defense; (2) allowed a custody order to be admitted into evidence under CRE 404(b) without redaction of prejudicial information; (3) allowed a judge who had entered two custody orders in his custody dispute to testify; and (4) allowed the prosecutor to misrepresent his affirmative defense to the jury in closing argument. We find no reversible error and therefore affirm.

## I. Background

Defendant had a brief romantic relationship with his daughter's mother. Following the daughter's birth in 1994, defendant sought to establish his legal rights as a parent. After numerous custody disputes, in 2000 defendant and the mother entered into a modified stipulated parenting plan. The agreement, later incorporated into a court order, made defendant the primary custodial parent and provided that the child's legal residence was with him, that he was the final decision maker for major decisions, and that he had the majority of parenting time. The 2000 custody order also provided that the child would continue to reside in Mesa County so long as the mother remained in Mesa County, and required both parents to inform one another if they planned to travel outside of the state with the child.

Between 2000 and 2004, defendant and the mother were involved in additional custody disputes. In early 2004, the mother filed a motion to modify the 2000 custody order, seeking to become the child's primary residential custodian. She asserted, in part, that defendant had inappropriately touched his daughter while applying medication for a yeast infection, an allegation later proved to be unfounded. Defendant objected to the motion, and the custody court scheduled a hearing for September 28, 2004.

On September 27, 2004, defendant took his daughter and flew with her to Australia, and thus did not attend the scheduled hearing. After the mother and others testified at the hearing, the custody court granted the mother's motion and modified the custody order to make her the primary residential custodian. The child was eventually returned to the mother.

The People charged defendant with violation of a custody order under section 18–3–304(2), C.R.S.2008, and harboring a minor in violation of section 18–6–601, C.R.S.2008. Defendant asserted, as an affirmative defense under section 18–3–304(3), C.R.S.2008, that he reasonably believed his conduct was necessary to preserve the child from danger to her welfare.

Following the prosecution's case-in-chief, the trial court granted defendant's motion for judgment of acquittal for harboring a minor. The jury subsequently found defendant guilty of violating a custody order, and this appeal ensued.

## II. Limitation of Affirmative Defense Evidence

Defendant contends that the trial court violated his right to present a defense when it limited his affirmative defense evidence. We disagree.

### A. Standard of Review

■ A trial court has broad discretion in ruling on the admissibility of evidence. *People v. Garcia*, 179 P.3d 250, 255 (Colo.App. 2007). Thus, we review a trial court's determination for an abuse of discretion. *People v. Mossmann*, 17 P.3d 165, 168 (Colo.App. 2000). A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *Jurgevich v. District Court*, 907 P.2d 565, 568 (Colo.1995).

■ However, if a trial court improperly disallows an affirmative defense, it lightens the prosecution's burden of proof, *see Vega v. People*, 893 P.2d 107, 111 (Colo.1995), which violates a defendant's constitutional right to due process. *People v. Garcia*, 113 P.3d 775, 784 (Colo.2005). An evidentiary ruling may rise to the level of constitutional error if it deprives a defendant of his right to present a defense or to conduct meaningful cross-examination on material issues. *Garcia*, 179 P.3d at 255.

### B. Application

■ Here, before trial, defendant moved in limine to introduce evidence of the custody dispute dating back to 2000 to prove his reasonable belief that his conduct was necessary to preserve his daughter's welfare. Specifically, he sought to introduce a November 2005 letter he wrote detailing custodial events that had taken place since 2000. He also sought to introduce the 121–page file the Mesa County Department of Human Services (DHS) had compiled concerning his daughter.

The prosecution objected to the introduction of such evidence, arguing that it should be limited to any evidence of danger to the child's welfare "recent in time to the abduction," and that rather than identifying specific instances of conduct that had caused immediate concern before the abduction, defendant was making general allegations of longstanding concerns relating to the protracted custody dispute.

Agreeing with the prosecution, the trial court held that "evidence as to defendant's state of mind [would be] properly limited to events and conduct occurring at or shortly before the abduction of the child." Specifically, the trial court allowed defendant to introduce evidence from February 2004 through September 27, 2004. Thus, defendant was allowed to introduce evidence of three incidents that caused him concern about his daughter's welfare, including the occasion on which the mother had accused him of inappropriate touching of the daughter that DHS had determined to be unfounded, and another occasion on which the mother had left the child without proper supervision, for which DHS had found that the child had been "placed at risk."

The trial court based its decision on *Mossmann*, in which a division of this court held that evidence in support of the affirmative defense to violation of a custody order may be limited to the defendant's state of mind at or shortly before the time of the child's abduction. *See Mossmann*, 17 P.3d at 172. In that case, the trial court's limitation of affirmative defense evidence to the three-week period before the defendant's violation of a custody order was held not to be an abuse of discretion. *Id.*

In support of this temporal limitation, the *Mossmann* division cited *People v. Tippett*, 733 P.2d 1183, 1191 (Colo.1987), in which the court stated:

The defendant introduced evidence to show that he was concerned for the children's safety. *While this evidence was properly limited to his state of mind at the time he took the four children*, and did not rise to the level of an affirmative defense to viola-

tion of custody, it does illustrate the familial nature of this situation.

*Id.* (emphasis added).

Defendant argues that the *Mossmann* division read *Tippett*'s passing comment about temporally limiting evidence in the context of the affirmative defense too rigidly, because the *Tippett* court did not establish any temporal guidelines governing admission of such evidence. We disagree.

The *Tippett* court made the statement quoted above in the context of determining that the trial court abused its discretion in failing to require the prosecution to elect between second degree kidnapping and violation of a custody order because the evidence supporting both was essentially identical. Nevertheless, the court's statement that the trial court "properly limited" the evidence to the defendant's "state of mind at the time he took the four children" is an indication that the trial court did not abuse its discretion in providing some temporal limitations. *Mossmann* merely states that evidence in support of the affirmative defense "may" be limited to a defendant's state of mind at or shortly before the time he or she takes a child in violation of a custody order. *Mossmann*, 17 P.3d at 168. We do not read either case to establish a "hard and fast" rule that such evidence *must* be limited. Instead, we perceive that, as in most cases involving introduction of evidence, the determination lies within the sound discretion of the trial court.

Here, we perceive no abuse of discretion in the trial court's limitation of the evidence to the eight months before the abduction. The most serious and verified incident contained in the DHS file appears to be the occasion during which the mother inappropriately left the daughter without adult supervision and DHS found the child was thereby "placed at risk." However, defendant was allowed to introduce this specific event and the DHS findings relating to it. The remainder of the DHS file only shows that there were ongoing custody disputes, that both the mother and defendant made complaints to DHS regarding the child's well-being, and that the mother had not been actively involved in making major decisions relating to the child's medical and educational welfare. Moreover, de-

fendant was allowed briefly to summarize his entire custodial history.

Defendant has pointed to no other specific incident that would be particularly probative regarding his asserted concern for the daughter's welfare. Unlike in *Mossmann*, where evidence was limited to the three-week period prior to the abduction, here, defendant was allowed to introduce evidence for the preceding eight months.

Hence, defendant was properly allowed to present evidence to support his affirmative defense. We thus perceive no violation of his right to present a defense.

## III. Custody Order

Defendant asserts that the trial court erred in admitting the 2004 custody order into evidence without redacting portions of the order that contained uncharged misconduct and prior bad acts. We disagree.

### A. Standard of Review

We review a trial court's determination on the admission of evidence for an abuse of discretion. *See People v. Stewart*, 55 P.3d 107, 122 (Colo.2002). A trial court abuses its discretion if the evidentiary ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Greenlee*, 200 P.3d 363, 366 (Colo. 2009).

### B. Evidentiary Principles

CRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." However, relevant evidence may nevertheless be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. CRE 403.

■ Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." CRE 404(b). However, such evidence may be admissible for other purposes, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. *People v. Rath*, 44 P.3d 1033, 1038 (Colo.2002).

### C. Application

■ Here, the prosecution sought to introduce the 2004 custody order. Defendant did not object to the portion of the custody order that changed custody to the mother. Rather, he requested that certain portions be redacted, including the court's determination that his conduct:

indicated a consistent and concerted effort to interfere with [the daughter's] relationship with her mother, to prevent her from spending time with her mother, and to damage that relationship. This includes consistently construing court orders to limit [the daughter's] time with her mother, and refusing it even when the orders are crystal clear on that topic; actively discouraging her relationship with her mother; and placing [the daughter] in fear that she will incur her father's wrath if she enjoys her time with her mother.

In addition, Mr. Beilke continues to make important decisions regarding [the daughter], including those regarding her education and medical treatment, without notifying her mother. Mr. Beilke treats [the daughter] not only as his property but as his sole property.

Retaining the present situation where Mr. Beilke has the decision making responsibilities, as well as most of the time with [the daughter], will significantly impair [the daughter's] emotional relationship with both parents. Neither relationship is healthy because Mr. Beilke has made it so.

After hearing argument, the trial court admitted the 2004 custody order in its entirety, concluding that redaction would be inappropriate because the statements in the custody order went to defendant's motive.

We perceive no abuse of discretion. The evidence relates to a material fact, inasmuch as it tends to establish defendant's motive under CRE 404(b). It is logically relevant because it tends to negate his affirmative defense that the only reason he removed his daughter from Colorado was for her own welfare. The custody order tends to prove that he wanted to remove the daughter be-

cause he would likely lose custody of her for the reasons stated in the order. The inference is independent of the intermediate inference that defendant has a bad character, and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See id.*

Defendant also asserts that the trial court erred in failing to give a limiting instruction concerning the use of this evidence. But he did not request such an instruction, and the failure to provide one sua sponte is not plain error here. *See People v. Crespi*, 155 P.3d 570, 576 (Colo.App.2006); *People v. Underwood*, 53 P.3d 765, 771 (Colo.App.2002).

## IV. Judge's Testimony

Defendant contends that the trial court erred when it allowed the judge who entered the custody orders to testify as a prosecution witness, and specifically to answer a question in which he opined that defendant had violated the 2000 custody order. Assuming, without deciding, that there was error in either event, we conclude that it was either harmless or not plain error.

### A. Standard of Review

■ We review a trial court's decision to admit or exclude opinion testimony for an abuse of discretion. *People v. Hoskay*, 87 P.3d 194, 197 (Colo.App.2003). If we determine that the trial court abused its discretion in admitting evidence, the question is then whether the error warrants reversal. *Liggett v. People*, 135 P.3d 725, 733 (Colo.2006). An evidentiary error is harmless where, viewing the evidence as a whole, it does not substantially influence the verdict or impair the fairness of the trial. *Id.*

■ When a defendant fails to object to the admission of evidence at trial, we review for plain error. *People v. Miller*, 113 P.3d 743, 748 (Colo.2005). "Plain" in this context is synonymous with "clear" or "obvious." Plain error is error that is so clearcut, so obvious, that a competent trial judge should be able to avoid it without benefit of objection. *People v. O'Connell*, 134 P.3d 460, 464 (Colo.App.2005) (citing *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123

L.Ed.2d 508 (1993)); *see United States v. Turman*, 122 F.3d 1167 (9th Cir.1997). Plain error requires reversal if, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Miller*, 113 P.3d at 750; *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003).

### B. Opinion Testimony

■ The judge was not called as an expert witness. A lay witness can provide opinion testimony regarding an ultimate issue to be decided by the trier of fact under certain circumstances. *See* CRE 701, 704; *People v. Collins*, 730 P.2d 293, 306 (Colo. 1986). However, a witness may not testify that a particular legal standard has or has not been met. The question that elicits the opinion testimony must be phrased to ask for a factual, rather than a legal opinion. *Collins*, 730 P.2d at 306; *see People v. Lesslie*, 939 P.2d 443, 450 (Colo.App.1996) (witness may not tell the jury what result to reach).

### C. Judicial Testimony

■ CRE 605 prohibits a judge who is presiding over a trial from testifying as a witness in that trial. However, "there is no statutory prohibition against a judge testifying as a witness in a cause not on trial before him." *Tippett*, 733 P.2d at 1193. Nor is there a prohibition against a judge testifying as a witness in another case concerning a former trial over which that judge presided. *People v. Drake*, 841 P.2d 364, 368 (Colo.App. 1992). For example, a judge may be called to testify to clarify an ambiguous record or to identify issues raised and decided in a former trial. *Tippett*, 733 P.2d at 1193.

■ However, it is contrary to public policy to permit a judge to be called as a witness to state the grounds upon which he or she decided a certain case. *Noland v. People*, 33 Colo. 322, 324, 80 P. 887, 888 (1905). Moreover, a judge's testimony is inadmissible to prove or contradict a judgment, because the record is the best evidence of the judgment. *Tippett*, 733 P.2d at 1193.

■ Permitting a judge to testify in a trial is generally disfavored. *See Drake*, 841 P.2d at 368.

> [G]iven the weight ... which a jury might accord [to] such evidence and given the judge's other duties, we view the practice of [judges testifying] as one which should be sparingly used and only when the proponent of the evidence shows the judge's testimony is not only relevant but also *necessary* to prove a material element of the case.

*Id.*

### D. Application

■ Here, the prosecution listed as a witness the judge who issued both the 2000 custody order and the 2004 modification of the custody order. The record reveals that after the prosecution disclosed its witness list, the defense did not object to the judge's providing testimony. Consequently, we review defendant's contention that the court erred in allowing *any* testimony by the judge for plain error.

Defendant objected when, during trial, the prosecutor asked the judge the following question about the 2000 custody order:

> Q: For the sake of shortness, assuming there was evidence that Mr. Beilke had moved [the child] without her mother's consent to Australia, to Perth, Australia, and made a decision, at least stated decision that he had decided to change his residence to Australia without her consent, would that be a violation of that court order?

After defendant's objection was overruled, the judge provided the following answer:

> A: Unless [the mother] had moved outside of Mesa County herself or unless she had agreed to that change, then yes, it would be a violation of this order because the only other way Mr. Beilke could be allowed to do this under this order would be with court—permission, and I know that he didn't have it ... because he would have gotten it from me.

Defendant asserts that the question posed to and answered by the judge requested and got an impermissible legal conclusion and

was tantamount to a directed verdict. The People respond that the judge's testimony was proper because he merely recited facts surrounding defendant's custody dispute, supported an element of the charged offense, and clarified any confusion regarding the custody orders he had entered.

We will assume, without deciding, that the question called for a legal conclusion and the response provided it. We will likewise assume that the judge's giving of any testimony concerning the custody orders runs afoul of the general rule stated in *Drake* that judicial testimony "should be sparingly used and only when the proponent of the evidence shows that the judge's testimony is not only relevant but also *necessary* to prove a material element of the case," *Drake*, 841 P.2d at 368. We so assume because the prosecution was able to prove a violation of the custody order merely by introducing it and providing testimony that defendant left the state with his daughter without notifying the mother or obtaining any permission to leave. Further, the mother testified to the order and its violation, as did mother's attorney. In addition, we perceive no ambiguity in the custody order. *See People v. Kriho*, 996 P.2d 158, 176 (Colo.App.1999) (affirming a trial court's decision not to allow a judge to testify where defendant failed to show the testimony was necessary and most of the proposed evidence could be obtained from the record of the underlying trial); *Ginsberg v. McIntire*, 348 Md. 526, 704 A.2d 1246, 1258 (1998) (recognizing that the Colorado standard for whether a judge's testimony is permissible in a specific case is a "standard of necessity").

However, any error as to the preserved objection is harmless, and any error as to the unpreserved objection is not plain. Defendant's violation of the custody order was essentially undisputed. His defense to the charge that he violated a custody order was that he "reasonably believed that his conduct was necessary to preserve the child from danger" as provided in section 18–3–304(3). Because he asserted an affirmative defense, defendant implicitly admitted that he violated the custody order. *See People v. Roadcap*, 78 P.3d 1108, 1113 (Colo.App.2003) (an affirmative defense is one in which a defendant

admits doing the act charged, but seeks to justify, excuse, or mitigate his or her conduct). Indeed, on cross-examination, defendant admitted his violation, but he asserted that it was justified and therefore excusable. Moreover, in closing, defense counsel did not argue that defendant had not violated the custody order. In addition, the evidence that defendant violated the custody order was overwhelming.

Thus, the judge's testimony could not have prejudiced defendant and could not have substantially influenced the verdict or impaired the fairness of the trial.

For similar reasons, we also reject defendant's argument that allowing the judge to testify to a legal conclusion amounted to a directed verdict in favor of the prosecution. Contrary to his contention, the trial court did not thereby withdraw an essential element of the charged offense from the jury's consideration. The jury was instructed concerning the elements of a violation and the affirmative defense, and returned a guilty verdict thereon.

## V. Closing Argument

Defendant argues that the prosecutor's remarks in closing argument improperly stated the law to the jury and therefore violated his rights to a fair trial. We agree that the prosecutor improperly stated the law in a portion of his closing argument, but we are not persuaded that the error requires reversal.

■■■■ We review asserted prosecutorial misconduct that is not objected to under the plain error standard. *Harris v. People,* 888 P.2d 259, 267 (Colo.1995). Prosecutorial misconduct constitutes plain error only when it is flagrant, glaringly, or egregiously improper. *People v. Wallace,* 97 P.3d 262, 268 (Colo.App.2004). Because defendant did not object to the prosecutor's statement at trial, we review for plain error.

■■■■ Final argument may properly include the facts in evidence and any reasonable inferences drawn therefrom. *People v. DeHerrera,* 697 P.2d 734, 743 (Colo.1985). However, it is improper for counsel to misstate or misinterpret the law during closing

argument. *People v. Rodriguez,* 794 P.2d 965, 977 (Colo.1990).

■■■ As previously noted, defendant relied on section 18–3–304(3), which states in part that "[i]t shall be an affirmative defense ... that the offender reasonably believed that his conduct was necessary to preserve the child from danger." In his initial closing argument, the prosecutor stated:

You have to determine is it a reasonable belief. That question is, do you think it's reasonable that he, Mr. Beilke, fled the United States, took [the child] away from her mother for a period of four months with the intent to deprive [the mother] of ever seeing her daughter again[?] That's the reasonable belief.

Defendant asserts that the prosecutor essentially changed the affirmative defense from his reasonable belief regarding his child's safety to his reasonableness in taking her to Australia. The prosecutor also addressed whether the mother's conduct in moving three times in the span of a year was reasonable, which defendant alleges additionally contributed to the jury's confusion on the reasonableness standard.

We are not persuaded that the statements regarding the reasonableness of the mother's conduct were confusing to the jury. Final argument may properly include the facts in evidence and any reasonable inferences drawn therefrom. *See DeHerrera,* 697 P.2d at 743. Defendant introduced the fact that the mother had moved three times in one year. Both during the trial and in closing argument, the prosecutor attempted to refute defendant's argument that her moving three times showed that she was unstable and therefore he had cause to be concerned about a change in custody. Thus, the prosecutor properly attempted to rebut any negative inferences the jury could have drawn about the moves.

However, with regard to the affirmative defense, the language of the statute specifically says that the offender must have "reasonably believed" his conduct was necessary, and thus, as defendant argues, the prosecutor essentially changed the affirmative defense from a reasonable belief regarding the

child's safety to his reasonableness in taking her to Australia. But the jury was provided with an instruction on defendant's affirmative defense, which correctly recited the language of the statute. Moreover, defendant does not refer to any other incident in the record where the prosecutor mischaracterized the standard, and our review of the record reveals that the prosecutor correctly characterized the defense in every other instance where it was mentioned. Because the single misstatement was not flagrant or glaringly improper, the jury received an instruction that properly stated the law, and the incident appears to have been isolated, *see Wallace*, 97 P.3d at 262, we perceive no plain error.

The judgment is affirmed.

Judge BERNARD and Judge MILLER concur.