23CA1119 Peo v Burnett 05-22-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1119
El Paso County District Court No. 22CR2960
Honorable David Shakes, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Walter Clyde Burnett,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division A
Opinion by JUDGE SCHOCK
Dunn and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John P. Finnegan, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Walter Clyde Burnett, appeals his convictions on two counts of sexual exploitation of a child.  He contends that (1) the evidence was insufficient to support one of his convictions; (2) the search warrant for his home lacked sufficient particularity; (3) the jury instruction on reasonable doubt impermissibly lowered the prosecution's burden of proof; and (4) the district court erred by admitting improper lay opinion testimony.  Alternatively, he argues that his two convictions should merge.  We affirm the judgment.

## I.    Background

¶ 2    While filling paper in a Walgreens photo printer, a store employee noticed two photos — an identification card and an "adult picture[] of a woman" — that violated store policy.  The photos had been submitted online by Burnett for printing by the store's photo department.  The employee gave the photos to the store manager, who then reviewed other photos Burnett had ordered and discovered what she believed to be nude photos of children.  The store manager contacted police and gave them the photos.

¶ 3    Several days later, Burnett placed another order that included nude photos of "young girls."  The store manager again gave the

1

photos to law enforcement.  Burnett came to the store that day to retrieve the photos, but the store manager did not give them to him.

¶ 4     Law enforcement then searched Burnett's home pursuant to a search warrant.  During the search, police found several other photos that appeared to depict nude children, as well as other nude photos of individuals who could have been adults.  Police seized and searched Burnett's phone, which contained some of the photos that had been discovered during the search of his home, as well as information indicating that Burnett had used the Walgreens online photo processing service.  Burnett told police he had printed photos at Walgreens and admitted to downloading nude pictures of women but claimed the women were over the age of eighteen.

¶ 5     Burnett was charged with two counts of sexual exploitation of a child — one under section 18-6-403(3)(b), C.R.S. 2024, and one under section 18-6-403(3)(b.5).  The date range for both counts ran from two days before the discovery of the first Walgreens order through the search of Burnett's home.  The prosecution argued at trial that the first count was based on Burnett transferring or making photos accessible to another person, while the second was based on his possession of the photos.  Burnett's primary defense

was that he reasonably believed the individuals in the photos were at least eighteen years old. *See* § 18-1-503.5(1), C.R.S. 2024.

¶ 6　　The jury convicted Burnett on both charges, and the district court sentenced him to five years of sex offender intensive supervised probation and ninety days in jail.

## II.　Sufficiency of the Evidence

¶ 7　　Burnett contends that the evidence was insufficient to support his conviction under section 18-6-403(3)(b) because, by sending the photos to Walgreens to be printed, he did not knowingly transfer them or make them accessible to another person. We disagree.

### A.　Standard of Review and Applicable Law

¶ 8　　In reviewing the sufficiency of the evidence, we review the record de novo to determine whether the evidence was sufficient both in quantity and quality to sustain the conviction. *Johnson v. People*, 2023 CO 7, ¶ 13. In doing so, we view the evidence "as a whole and in the light most favorable to the prosecution" to determine if the evidence is "substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Id.* (citation omitted).

¶ 9     When a challenge to the sufficiency of the evidence depends on statutory interpretation, we interpret the statute de novo. *People v. Vidauri*, 2021 CO 25, ¶ 11. We begin with the language of the statute, giving words and phrases their "plain and ordinary meanings" and reading them in context "according to the rules of grammar and common usage." *McCoy v. People*, 2019 CO 44, ¶ 37.

¶ 10     As relevant in this case, a person commits sexual exploitation of a child if the person knowingly "transfers to another person, or makes accessible to another person, including, but not limited to, through digital or electronic means, any sexually exploitative material." § 18-6-403(3)(b). This subsection of the statute is intended to "reach any use of sexually explicit material beyond mere possession or control that impacts or involves 'the channels of trade and commerce.'" *People v. Robles-Sierra*, 2018 COA 28, ¶ 39.

## B.     Analysis

¶ 11     For purposes of his sufficiency challenge, Burnett does not dispute that the photos he sent to Walgreens included sexually exploitative material. But he argues that the evidence was insufficient to prove that he transferred or made those photos accessible to another person. Because we conclude that the

4

evidence was sufficient to prove Burnett made the photos accessible to another person, we need not decide whether the evidence was also sufficient to prove he transferred them. *See People v. Rowe*, 2012 COA 90, ¶ 23 (declining to address other theories of liability where evidence was sufficient to support one of them); *People v. Meils*, 2019 COA 180, ¶ 43 (holding that section 18-6-403(3) "prescribes alternative ways of committing the same offense").[1]

¶ 12    The statute does not define "makes accessible." But the plain and ordinary meaning of "accessible" is "capable of being reached" or "capable of being used or seen." Merriam-Webster Dictionary, https://perma.cc/Z9J5-5NCC; *see also Griego v. People*, 19 P.3d 1, 9 (Colo. 2001) (looking to dictionary definitions to determine ordinary meaning). And to "make" is "to cause to happen to or be experienced by someone" or "to cause to exist, occur, or appear." Merriam-Webster Dictionary, https://perma.cc/8ZM5-Q75H.

---

[1] Burnett argues for the first time in his reply brief that his conviction must be reversed if the evidence was insufficient as to *any one* of the means listed in section 18-6-403(3)(b), C.R.S. 2024. We do not address arguments raised for the first time in a reply brief. *People v. Czemerynski*, 786 P.2d 1100, 1107 (Colo. 1990), *abrogated on other grounds by Rojas v. People*, 2022 CO 8. We note, however, that this is not a case involving a "legally inadequate basis of liability." *People v. Mantos*, 250 P.3d 586, 591 (Colo. App. 2009).

Thus, read in context, the phrase "makes accessible" means to cause something to be capable of being reached, used, or seen.

¶ 13    The evidence was sufficient to support the conclusion beyond a reasonable doubt that, by sending the photos to Walgreens to be printed, Burnett knowingly caused those photos to be capable of being seen, at a minimum, by Walgreens employees. The store manager testified that online photo orders are printed from the main computer in the photo department. There was also evidence indicating that the printed photos were then placed in an envelope for pickup by the customer. Even if the printing process itself was automated, these circumstances support an inference that Burnett knew that someone would be handling the order and, thus, that the photos were at least *capable* of being seen by a Walgreens employee.

¶ 14    Burnett argues that interpreting "makes accessible" in this manner would make it indistinguishable from possession — a lesser class of sexual exploitation of a child. *See* § 18-6-403(3)(b.5), (5)(b). But by sending the photos to a third-party printing service, Burnett made those photos accessible to others in a way that his own possession did not. We disagree with Burnett's suggestion that photos in one's personal possession are "capable of being reached"

6

simply because a third party could go to the person's home and see them. Rather, subsection (3)(b) is intended to reach conduct *beyond mere possession or control,* including conduct that affects the channels of trade and commerce. *Robles-Sierra,* ¶ 39; *see also* § 18-6-403(1). The submission of photos to a public business for printing constitutes such additional conduct.

¶ 15 Burnett also asserts that, even if the photos were accessible to Walgreens employees, he did not act knowingly because it was not practically certain the photos would be seen, given the automated nature of the printing process. *See* § 18-1-501(6), C.R.S. 2024 ("A person acts 'knowingly' . . . when he is aware that his conduct is practically certain to cause the result."). But this argument misunderstands what must be done knowingly. Burnett did not need to knowingly cause the photos to be seen; he needed to knowingly cause the photos to be *capable* of being seen. And a jury could reasonably conclude beyond a reasonable doubt that Burnett was aware his submission of the photos to Walgreens was practically certain to make those photos *capable* of being seen — if nothing else, by the employee who prepared them for pickup.

¶ 16     We therefore conclude that the evidence was sufficient to sustain Burnett's conviction under section 18-6-403(3)(b).

## III.     Search Warrant

¶ 17     Burnett next argues that the district court erred by failing to suppress evidence derived from the search of his home because the search warrant was not sufficiently particular.  We again disagree.

### A.     Additional Background

¶ 18     Based on the photos Burnett sent to Walgreens for printing, police obtained and executed a search warrant for Burnett's home.  The warrant identified the items to be searched for and, if found seized, by reference to an attachment that it incorporated.

¶ 19     The attachment described those items as property

> within [Burnett's residence or property] . . . that is or has been used as a means of committing a criminal offense, is illegal to possess, or would be material evidence in a subsequent criminal prosecution, in violation of Colorado Revised Statutes 18-6-403 titled Sexual Exploitation of a Child and 18-3-405[, C.R.S. 2024,] Sexual Assault on a Child.

It then listed sixteen categories of items.  As relevant here, those categories included "[i]tems of indicia"; "[e]vidence related to the ownership, control, or use of the computer/device system, media,

files, programs, and Internet service provider accounts"; and "[i]tems that would establish ownership or use of computers/devices and ownership or use of any Internet service accounts accessed to obtain child pornography."

¶ 20    Burnett moved to suppress all evidence derived from the search of his home on the grounds that the warrant was overbroad and lacked probable cause. At the motion hearing, Burnett asserted that the warrant "lists . . . a large amount of things to be seized at the house including . . . information regarding computer device storage systems . . . that [are] far outside the scope of what law enforcement should be able to apply for a warrant for."

¶ 21    The district court denied the motion, concluding that the warrant was supported by probable cause and not overbroad.

B.    Applicable Law and Standard of Review

¶ 22    The Fourth Amendment requires search warrants to "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also* Colo. Const. art. II, § 7 (requiring warrant to "describ[e] the place to be searched, or the person or thing to be seized, as near as may be").

¶ 23    This requirement ensures that a government search is "confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *People v. Seymour*, 2023 CO 53, ¶ 44 (citation omitted). A warrant is "adequately particularized as to the 'things to be seized' when it allows an executing officer to 'reasonably ascertain and identify the things authorized to be seized.'" *Id.* at ¶ 50 (citation omitted).

¶ 24    We review de novo whether a search warrant satisfies the particularity requirement. *Pettigrew v. People*, 2022 CO 2, ¶ 49.

### C.    Analysis

¶ 25    Burnett argues that certain categories of items listed in the warrant were too broad or vague to provide the requisite particularity. He points to two categories in particular — "items of indicia" and "evidence related to the ownership, control, or use of the computer/device system" — and asserts that these categories effectively authorized the seizure of all items in his home.

¶ 26    We first address the People's argument that Burnett failed to preserve this argument. The focus of Burnett's motion to suppress was that the warrant lacked probable cause. Although he expanded his argument somewhat at the suppression hearing by challenging

10

the breadth of the items listed in the warrant, he did so generally and did not specifically challenge the categories he does on appeal. In other words, Burnett argued that officers should not have been able to search for certain items at all rather than that the warrant did not sufficiently describe those items. Nevertheless, though a close call, we conclude that Burnett's assertion that the list of items in the warrant was overbroad was sufficient to alert the district court to the particularity issue Burnett raises on appeal. *See People v. Pahl,* 169 P.3d 169, 183 (Colo. App. 2006).

¶ 27    Turning to the merits of Burnett's argument, if the challenged categories stood alone, he would have a point. But they do not stand alone. Instead, *all* the categories listed in the warrant are confined by the overarching limitation that the items must relate to the crimes of sexual exploitation of a child or sexual assault on a child. Thus, read in context, the phrases in question authorized officers to search for (1) "items of indicia" *of sexual exploitation or sexual assault of a child*; and (2) "evidence related to the ownership, control, or use of [a] computer" *used to commit, or containing evidence of, sexual exploitation or sexual assault of a child. See People v. Roccaforte,* 919 P.2d 799, 804 (Colo. 1996) (requiring

11

courts to read warrants "in a practical, common sense fashion"). By limiting the search to items related to "specific crime[s] for which there [was] demonstrated probable cause," the warrant provided the requisite particularity. *Seymour*, ¶ 44 (citation omitted); *see also United States v. Suggs*, 998 F.3d 1125, 1134 (10th Cir. 2021) ("[A] warrant may satisfy the particularity requirement if its text constrains the search to evidence of a specific crime . . . .").

¶ 28 Burnett attempts to liken this case to *People v. Herrera*, 2015 CO 60, in which the supreme court held that a cell phone warrant did not authorize a search of all data contained on the phone. But the problem in *Herrera* was not the warrant. *Id.* at ¶ 25 (noting that initial search was legitimate). It was the People's *interpretation* of the warrant to authorize a search that was *not* limited to the particular alleged crime. *Id.* at ¶ 20. In contrast, the warrant in this case was expressly limited to evidence of specific crimes, and Burnett does not argue that law enforcement exceeded its scope.

¶ 29 Burnett also argues that the crime-based limitation is "meaningless" because officers could not determine if items were related to that crime without going through Burnett's effects in the first place. That may be true, but it does not make the warrant

12

insufficiently particular.  In executing a search warrant, officers may search any area in which the items identified in the warrant might reasonably be found.  *Id.* at ¶ 31.  And unless they know exactly where those items are kept, they will need to look for them — including in places it turns out they are not.  *See United States v. Bishop*, 910 F.3d 335, 336-37 (7th Cir. 2018) ("A warrant authorizing a search of a house for drugs permits the police to search everywhere in the house, because 'everywhere' is where the contraband may be hidden.").  But as long as the warrant describes the items that officers are authorized to search for and seize with as much particularity as the circumstances allow, that is all the Constitution requires.  *See Seymour*, ¶ 52; *Bishop*, 910 F.3d at 337 ("It is enough . . . if the warrant cabins the things being looked for by stating what crime is under investigation.").

¶ 30    Because the warrant in this case particularly described the things to be seized by reference to the crimes under investigation, the district court did not err by denying the motion to suppress.

IV.    Reasonable Doubt Instruction

¶ 31    Burnett next contends that the district court erred by giving the then-in-effect Colorado model jury instruction on reasonable

doubt, which Burnett argues lowered the prosecution's burden of proof, shifted the burden of proof to him, and undermined the presumption of innocence. *See Tibbels v. People*, 2022 CO 1, ¶ 22 ("Instructions that lower the prosecution's burden of proof below the reasonable doubt standard constitute structural error . . . ."). Specifically, he challenges (1) the failure to instruct the jury that reasonable doubt may arise from the "lack of evidence" and (2) the direction that the prosecution has failed to meet its burden "if you think there is a real possibility that the defendant is not guilty."

¶ 32    A division of this court recently rejected each of Burnett's arguments. *People v. Schlehuber*, 2025 COA 50, ¶¶ 18-25, 29-34 (holding that 2022 model jury instruction on reasonable doubt correctly describes the burden of proof); *see also People v. Melara*, 2025 COA 48, ¶¶ 24, 32 (holding that omission of "lack of evidence" language was not structural error). We agree with *Schlehuber*.

¶ 33    Although Colorado courts have approved of reasonable doubt instructions that refer expressly to the "lack of evidence," *see People v. Robb*, 215 P.3d 1253, 1262 (Colo. App. 2009), "that does not mean . . . it is error *not* to include that phrase," *Schlehuber*, ¶ 24. To the contrary, "the concept of reasonable doubt inherently invites

14

jurors to consider what evidence is missing." *Id.* at ¶ 21. And read as a whole, the instruction properly informs the jury that "if the prosecution fails to present sufficient evidence of guilt, it will not have met its burden." *Id.* at ¶ 22. Thus, there is no reasonable likelihood that the jury understood the omission of an express reference to the "lack of evidence" to lower the prosecution's burden of proof below the reasonable doubt standard. *Id.* at ¶ 25.

¶ 34 The district court also did not err by equating reasonable doubt with a "real possibility that the defendant is not guilty." *See id.* at ¶¶ 29-34. This formulation — which has been consistently approved by federal courts — "correctly directs the jury not to acquit the defendant simply because it can conceive of *some* fanciful possibility that the defendant is not guilty." *Id.* at ¶¶ 30-31. Juxtaposed against the instruction that proof beyond a reasonable doubt is proof that leaves the jury "firmly convinced" of the defendant's guilt, the "real possibility" phrase "give[s] the jury a complete picture of the reasonable doubt standard." *Id.* at ¶ 33. And it does not shift the burden of proof to the defendant because "[n]othing in that phrase suggests that the defendant must be 'the source of the "real possibility."'" *Id.* at ¶ 34 (citation omitted).

15

¶ 35    We therefore conclude, consistent with *Schlehuber*, that the district court did not lower the prosecution's burden of proof or otherwise err by giving the model jury instruction then in effect.

## V.    Lay Opinion Testimony

¶ 36    Burnett's final challenge to his convictions is that the district court reversibly erred by (1) allowing multiple witnesses to offer lay opinion that the individuals in the photos were under eighteen years old and (2) allowing the lead detective to answer a jury question about the number of "sexually exploitative images" found at Burnett's home.  We conclude that any error was harmless.

## A.    Additional Background

¶ 37    Four witnesses testified at trial that the individuals in the photos appeared to be under the age of eighteen:

- The store manager testified that the first set of photos concerned her because "[t]here [were] children" and that the second set of photos included "young girls."  She also testified that she called police after seeing the first set of photos because she saw "young girls . . . being abused."

- The patrol officer who initially responded to the store manager's call testified that the females in some of the

photos he observed "looked, on their appearance, to be underage; under the age of 18."

- A detective testified that she believed the person in two of the photos was under eighteen years old. She testified that two other photos were "age difficult," in that the person's "face is very young, but her body shows that it might be older than 18."

- The lead detective (now a sergeant) testified that, although police cannot identify a person's specific age, they "can say it's under the age of 18, and with good estimation," provide an age range. He testified that he believed one photo "depicts somebody who's a juvenile" because "the development of the child in that photo is . . . almost prepubescent, kind of younger of age."

¶ 38    Defense counsel objected to all this testimony on the ground that age was an issue for the jury to determine. The district court overruled each objection, often without explanation but twice reasoning that the testimony was "proper" or "helpful" lay opinion.

¶ 39    After the lead detective's testimony, a juror posed a question to him: "How many sexually exploitative images were determined to be

found at Burnett's residence in total?" Burnett objected under CRE 403 and CRE 404(b), arguing that the question called for speculation, was prejudicial, and could elicit testimony about other uncharged bad acts. The district court overruled the objections and asked the detective the question. The detective responded:

> I do not recall the specific totals. Some of the images that were brought up were not our main focus. We were more concerned with the juvenile photos.
>
> So I think there w[ere] under 10 photos, at that point in time.

### B. Applicable Law and Standard of Review

¶ 40 Lay opinion testimony — the opinion of a non-expert witness — must be (1) rationally based on the witness's perception; (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of CRE 702. CRE 701. Such testimony is admissible when it "describe[s] something that the jurors could not otherwise experience for themselves by drawing upon the witness's sensory and experiential observations that were made as a firsthand witness to a particular event." *People v. McFee*, 2016 COA 97, ¶ 76 (citation omitted).

¶ 41     But a witness "may not form conclusions for jurors that they are competent to reach on their own." *Id.* Thus, lay opinion testimony is not helpful to the jury when it is "based on exactly the same information the jury had." *Id.* Nor may a witness testify that "a particular legal standard has or has not been met." *People v. Beilke*, 232 P.3d 146, 152 (Colo. App. 2009); *see also People v. Collins*, 730 P.2d 293, 306 (Colo. 1986) (explaining that lay opinion testimony may not "merely tell the jury what result to reach").

¶ 42     We review the district court's evidentiary rulings, including the admission of lay opinion testimony, for an abuse of discretion. *People v. Vergari*, 2022 COA 95, ¶ 16. A court abuses its discretion when "its decision is manifestly arbitrary, unreasonable, or unfair, or based on a misapplication or misunderstanding of the law." *Id.*

¶ 43     We review preserved evidentiary error for harmless error and will reverse only if it "substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* at ¶ 17 (citation omitted). An error is harmless if "there is no reasonable possibility that it contributed to the defendant's conviction." *Id.* (citation omitted).

## C.    Ages of Individuals in Photos

¶ 44    We agree that the witnesses' testimony regarding the ages of the individuals in the photos — none of which was presented as expert opinion — was not helpful to the jury in determining the actual ages of those individuals.  That testimony was based entirely on the witnesses' review of the photos.  Because the jury also had those photos, it was "in precisely the same position" as the witnesses to review the photos and determine whether the individuals were less than eighteen years old.  *McFee,* ¶ 76.

¶ 45    But the testimony could have been helpful for another purpose: assessing Burnett's affirmative defense that he *reasonably believed* the children to be eighteen years of age or older.  *See* § 18-1-503.5(1).  A juror's own personal determination that an individual in a photo appeared to be a child would not necessarily answer whether a person could reasonably believe otherwise.  That four witnesses had seen the photos and agreed they depicted children could inform the jury's determination of that issue.  *See Collins*, 730 P.2d at 307 (holding that witness's opinion that there was no

necessity to use a deadly weapon was helpful in determining what a reasonable person would have believed under the circumstances).[2]

¶ 46　　But even assuming the district court erred by admitting the testimony, any error was harmless because the jury saw the photos and could make its own determination as to whether the individuals in those photos were under eighteen. *See McFee*, ¶ 78; *Vergari*, ¶ 20. Although three of the witnesses were police officers, they did not claim that their opinions as to the individual's ages were based on any special expertise or knowledge; they simply looked at the photos and thought the people in them looked like children. The jury therefore had "no reason to accept [the witnesses'] opinion" when it could "evaluate [the photos] for itself." *McFee*, ¶ 79.

¶ 47　　Indeed, in closing argument, both the prosecution and defense counsel repeatedly urged the jury to do just that. The prosecution explained that the witnesses had given their opinions "just as lay people who live in this world and have life experience," and it told

---

[2] The store manager's testimony that she saw photos of "children" and "young girls" was also helpful to explain why she called police. *See United States v. Stanley*, 896 F.2d 450, 452 (10th Cir. 1990) (holding that postal inspector's testimony that photos depicted children was helpful to explain his investigative actions).

the jury to "make those determinations [itself]." *See Vergari*, ¶ 20 (holding that error was harmless when court instructed jury to view the videos and draw its own conclusions). Defense counsel likewise emphasized that none of the witnesses had any medical training and that *the jury* needed to determine how old the individuals looked. Under these circumstances, there is no reasonable probability that the jury uncritically accepted the witnesses' opinions rather than forming its own conclusions. *See id.*

### D. Number of Sexually Exploitative Images

¶ 48 Burnett also argues that the district court erred by allowing the lead detective to answer the jury question regarding the number of "sexually exploitative images" found in Burnett's home.

¶ 49 Although Burnett asserts that this testimony was improper lay opinion under CRE 701, he did not preserve that objection in the district court, instead objecting only under CRE 403, CRE 404(b), and the constitutional right to a fair trial. *See People v. Gee*, 2015 COA 151, ¶ 45 ("If an objection or request was made in the trial court on grounds different from those raised on appeal, the issue is unpreserved."). We therefore review this issue for plain error, meaning the error must be "obvious and substantial" and "so

undermine[] the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *McFee*, ¶ 71.

¶ 50 We agree that the question was improper to the extent it asked the detective to opine on the ultimate legal conclusion that the photos in Burnett's home were "[s]exually exploitative material." § 18-6-403(2)(j); *see also Beilke*, 232 P.3d at 152 ("The question that elicits the opinion testimony must be phrased to ask for a factual, rather than a legal opinion."). But the detective's response mostly alleviated that problem by framing the answer in terms of the number of photos law enforcement was "concerned about" rather than the number of photos that were "sexually exploitative." *See People v. Collins*, 2021 COA 18, ¶ 68 (holding that witness's proper answer to an improper question rendered any error harmless).

¶ 51 In any event, even assuming it was obvious error to ask and allow the detective to answer this juror question, any error was not substantial for the reasons above. The focus of the question was not *whether* the photos were sexually exploitative but the *number* of photos at issue, compared to the total number of sexually explicit

23

photos found in Burnett's home.[3]  To the extent the detective's response conveyed an opinion about the nature of the photos, it did little more than the testimony that the individuals in the photos were underage, which we addressed above.  *See* § 18-6-403(2)(j) (defining "[s]exually exploitative material" as "any photograph . . . that depicts a child engaged in . . . explicit sexual conduct").

¶ 52    The jury had the photos before it and could make its own determination as to whether they were "sexually exploitative material."  *See McFee*, ¶ 78.  The detective's testimony therefore did not create "the kind of prejudice that would cast doubt on the reliability of the verdict."  *Id.*; *cf. Lawrence v. People*, 2021 CO 28, ¶¶ 52-56 (holding that expert testimony addressing applicable legal standards did not usurp the jury's role or, alternatively, was harmless, when it addressed only one element of the crime, the jury was instructed that it was free to disregard the witness's testimony, and substantial evidence supported the jury's findings).

---

[3] Indeed, defense counsel specifically highlighted this point in closing argument, calling the juror question "such a good question" and emphasizing that out of more than one hundred photos found in Burnett's home, only ten were "potentially exploitative."

## VI.  Merger

¶ 53     Finally, Burnett argues that his two convictions for sexual exploitation of a child should merge.  Because the evidence supports at least two separate and distinct offenses, we disagree.

¶ 54     The Double Jeopardy Clauses of the United States and Colorado Constitutions prohibit the imposition of multiple punishments for the same criminal conduct.  *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005).  To determine whether multiple convictions under the same statute violate double jeopardy, we consider (1) whether the unit of prosecution prescribed by the legislature permits charging multiple offenses and (2) whether the evidence in support of each offense justifies charging distinct offenses.  *Quintano v. People*, 105 P.3d 585, 590 (Colo. 2005).

¶ 55     Section 18-6-403(5)(b) specifies that the unit of prosecution for sexual exploitation of a child under subsection (3)(b.5) is each item of sexually exploitative material possessed.  The statute does not specify the unit of prosecution under subsection (3)(b).  But we need not decide whether the unit of prosecution under that subsection is each item of sexually exploitative material made accessible or each instance of making sexually exploitative material

25

accessible because, either way, there was evidence of two such instances. *See Friend v. People*, 2018 CO 90, ¶ 21 ("[A] single unit of prosecution does not immunize a defendant from being punished separately for successive commissions of the same offense.").

¶ 56    So the question is whether the prosecution presented evidence to support two factually distinct offenses. *See Woellhaf*, 105 P.3d at 218. It did. The prosecution presented evidence of three distinct groups of sexually exploitative material: (1) the photos submitted to Walgreens in the first order; (2) the photos submitted in the second order about a week later; and (3) the photos found at Burnett's home a week after that. The two photos orders were each independently sufficient to support the subsection (3)(b) charge, and, as the prosecution argued in closing, any one of the three groups of photos could have supported the subsection (3)(b.5) possession charge. Thus, whether the unit of prosecution is each photo (as it is for possession) or each act of making photos accessible, the evidence was sufficient to support separate and distinct offenses under subsection (3)(b) and subsection (3)(b.5). *See People v. Price*, 2023 COA 96, ¶¶ 42-45 (holding that conviction for possession of a forged instrument did not merge with

convictions for forgery when evidence established six separate instances in which defendant possessed counterfeit money).

¶ 57 Relying on *Meils*, Burnett argues that his convictions must merge because both counts involved the same date range and "neither party argued that the multiple charges resulted from discrete offenses committed at different times." *Meils*, ¶ 44. But in *Meils*, all the offenses occurred on a single date — the only question was *which* date — and there was no indication of any distinction between them. *Id.* In contrast, the prosecution in this case presented evidence of three distinct groups of photos and explicitly identified each "batch of photos" in closing. While the prosecution did not directly tie each batch of photos to one of the two charged offenses, it did not need to. *See Price*, ¶ 45 (holding that merger was not required when "distinct and separate evidence supported each conviction" and "verdict form did not assign particular acts to particular charges"); *People v. Gingles*, 2014 COA 163, ¶ 45 (noting that double jeopardy multiplicity claims are resolved on the basis of the unit of prosecution and the sufficiency of the evidence, not "on the basis of the positions taken by the parties at trial").

¶ 58    Burnett also argues that his convictions must merge because subsection (3)(b.5) is a lesser included offense of subsection (3)(b). *See Reyna-Abarca v. People*, 2017 CO 15, ¶ 64 (holding that lesser included offense merges into greater offense).  But "[m]ultiple convictions for two separate offenses the elements of one of which constitute a subset of the elements of the other can clearly stand if the offenses were committed by distinctly different conduct."  *People v. Rock*, 2017 CO 84, ¶17.  In other words, convictions for a lesser and a greater offense may both stand when, as in this case, the evidence supports the commission of two factually distinct offenses.

## VII.   Disposition

¶ 59    The judgment is affirmed.

JUDGE DUNN and JUDGE BROWN concur.