The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Clinton Martin DRAKE, Defendant–
Appellant.

No. 90CA0756.

Colorado Court of Appeals,
Div. III.

Aug. 13, 1992.

As Modified on Denial of Rehearing
Oct. 1, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Laurie A. Booras, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Samuel Santistevan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge ROTHENBERG.

Defendant, Clinton Martin Drake, appeals the judgment of conviction entered upon a jury verdict finding him guilty of first degree perjury. We affirm.

On October 30, 1988, the defendant and Sean Lankford committed a burglary of an apartment in search of guns. During the burglary, the defendant sexually assaulted a young woman who was house-sitting at the apartment. The two men wore nylon stockings over their faces while committing the offenses. Although the victim recognized the defendant as someone she had previously known, she did not recognize Lankford.

In November 1988, the defendant was interviewed and he confessed to the crimes, implicating Lankford as his accomplice. Thereafter, the defendant, who was facing two sexual assault charges and one burglary charge, negotiated a plea bargain in which he would receive a maximum of 45 years for those offenses in exchange for his testimony against Lankford.

On March 6, 1989, the defendant entered his plea pursuant to the plea bargain. During the plea proceedings, he again acknowledged Lankford's involvement in the crime.

Sentencing was continued until after Lankford's trial date so that the prosecution could include in the sentencing recommendation whether the defendant had cooperated by testifying against Lankford.

A short time before Lankford's trial, which began on March 27, 1989, the prosecution interviewed the defendant in order to prepare the case for trial. During this interview, the defendant again implicated Lankford as his accomplice.

Subsequently, however, before Lankford's trial began, the defendant received threats about "snitching" on Lankford, and, at that trial, he testified that he did not know or could not remember who participated with him in the burglary and sexual assault. Lankford was convicted despite defendant's testimony.

Defendant was then sentenced to 45 years imprisonment with concurrent sentences of lesser terms for his other offenses, and the perjury prosecution here at issue was initiated.

In a jury trial, defendant relied on a defense of duress, but was, nevertheless, convicted. This appeal followed.

## I.

■ Defendant first contends that the trial court erred in denying his motion for mistrial made after a juror disclosed during trial that she recognized the victim. We disagree.

At the perjury trial, the prosecution called the victim of the sexual assault as a witness. Before the victim took the stand, she told the prosecutor that one of the jurors was the mother of a friend. However, the prosecutor did not disclose this information to the court or to defense counsel.

When the victim walked into the courtroom, the juror also recognized the victim as one of her daughter's acquaintances, and, after the victim and another witness had testified, the juror brought this fact to the bailiff's attention during a recess. The bailiff immediately notified the court.

The trial court then conducted an *in camera* hearing with counsel and defendant to inquire into this information. At the conclusion of the hearing, which was not recorded, the court stated:

> [The juror] stated that she did not know the witness by name, other than as Sue, that she last saw the witness about five years ago, which was subsequent to the assault that the witness described in her testimony, but that she was unaware of the assault on the young lady or the criminal episode, and that she did not believe that the witness recognized her, but that she wanted to make it known to the court and the court wanted it known to the attorneys and the defendant of her recognition of the individual. She further stated that this acquaintanceship of the young girl and one of her daughters would not, in any way, affect her ability to be a fair and impartial juror.

. . . .

> [T]he juror very candidly said that this would in no way affect her ability to be a fair and impartial juror.

After this statement, the court gave the defense the opportunity to have the juror's statements put on the record. However, the defense agreed that the court's summary was accurate.

Following the court's recitation, the defense made a motion for mistrial which was denied. The court stated that:

> [The juror's] credibility is such that the court believes that she will be a fair and impartial juror and this acquaintanceship is very slight and does not affect her ability to be such, a fair and impartial juror, and, so, the request for mistrial is denied.

■ Under certain circumstances, a juror's non-disclosure of information during jury selection may be grounds for a new trial; that is, a new trial may be justified if a juror deliberately misrepresents important biographical information or knowingly conceals a bias or hostility toward the defendant. *See People v. Borrelli,* 624 P.2d 900 (Colo.App.1980).

■ However, if, as here, the juror's non-disclosure was inadvertent and not de-

liberate, the defendant must show that the non-disclosed fact "was such as to create an actual bias either in favor of the prosecution or against the defendant...." *People v. Dunoyair*, 660 P.2d 890 (Colo.1983).

Here, the trial court found that this juror's acquaintance with the witness was extremely minimal and would not affect her ability to weigh impartially the credibility of that witness. Given the circumstances at issue, and the very slight acquaintance between the juror and witness, we find no abuse of discretion by the trial court in its determination that the juror was impartial and, therefore, find no abuse of discretion in its denial of the defendant's motion for mistrial. *See People v. Brown*, 731 P.2d 763 (Colo.App.1986).

## II.

■ The defendant next contends that the prosecutor's misconduct in not immediately notifying the court about the juror's knowledge of the witness denied defendant his right to be tried by a fair and impartial jury. Although we disapprove of the prosecutor's inaction, we conclude that it does not require reversal.

■ A district attorney must avoid partiality and misconduct in the performance of his or her duties. *See Wheeler v. District Court*, 180 Colo. 275, 504 P.2d 1094 (1973). The duty of a prosecutor is to seek justice, not merely convict. *See People v. District Court*, 632 P.2d 1022 (Colo. 1981).

Here, before she testified, the victim of the sexual assault informed the prosecutor that she recognized one of the jurors as the mother of a friend. However, the prosecutor did not disclose that information to the court or to defense counsel until after the victim and an additional witness had testified. And, the prosecutor's disclosure was made only after the juror had advised the court that she recognized the victim.

The prosecutor explained the reason for the non-disclosure as follows:

I did not bring it [the victim's recognition of the juror] to the court's attention, because I felt that had that juror been familiar with [the victim], she would have responded in the affirmative when asked by the court during the initial questioning.

■ We hold that if a prosecution witness advises the prosecutor that he or she knows or recognizes one of the jurors, the prosecutor has an affirmative duty immediately to notify the court and opposing counsel of the witness' statement. The failure to do so breaches the prosecutor's obligation to the court and may also preclude the defendant from making a timely challenge to that juror. *See generally* ABA, Standards for Criminal Justice, Standard 3–1.1 and 3–5.4(a) (2d ed. 1980); Code of Professional Responsibility DR 7–102(A)(3) and DR 7–103(B).

Nevertheless, here, in view of the trial court's finding that the juror was able to remain impartial, we conclude that the prosecutor's delay in notifying the court did not affect the outcome of the trial, and therefore, it does not require reversal of the judgment. *See People v. Rogers*, 706 P.2d 1288 (Colo.App.1985).

## III.

■ The defendant next contends that it was plain error for the trial judge who had presided over Lankford's trial to testify as a witness for the prosecution in defendant's perjury trial. More specifically, defendant claims that the trial judge's testimony contained irrelevant and prejudicial matters and that the jury might have given his testimony undue influence. We disagree that there was plain error.

■ In order to obtain reversal under the plain error doctrine, defendant must demonstrate error that was both "obvious" and "grave." *Graham v. People*, 705 P.2d 505 (Colo.1985). That is, the error must so undermine the fundamental fairness of the trial itself as to cause serious doubt as to the reliability of the conviction. *People v. Flysaway*, 807 P.2d 1179 (Colo.App.1990).

■ Public policy and convenience prohibit judges from being called as witnesses to state the grounds upon which they decided former cases. *See Noland v. People*, 33 Colo. 322, 80 P. 887 (1905). In addition, judges may not testify voluntarily

as character witnesses, Colorado Code of Judicial Conduct Canon 2, and even if subpoenaed, they may be prevented from testifying if there are other character witnesses who can provide similar testimony. *See People v. Morley*, 725 P.2d 510 (Colo.1986).

■ Despite these limitations, there is no statutory or ethical prohibition in Colorado preventing a judge from testifying as a witness in a case not on trial before that judge *about matters arising in a former trial over which that judge presided.* Nevertheless, given the weight to which a jury might accord such evidence and given the judge's other duties, we view the practice of doing so as one which should be sparingly used and only when the proponent of the evidence shows that the judge's testimony is not only relevant but also *necessary* to prove a material element of the case.

In *People v. Tippett*, 733 P.2d 1183 (Colo. 1987), our supreme court observed that a judge's testimony is not admissible to prove or contradict a judgment because the record is the best evidence of the judgment; however, the judge may be called to clarify an ambiguous record, for example, in a contempt or disciplinary proceeding where an individual's attitude and demeanor may not be reflected by the bare record. Also, it noted that a judge's testimony might be necessary to identify the issues raised and decided in a former trial.

■ Here, however, the trial judge who presided over Lankford's case not only discussed the backgrounds of both defendant's and Lankford's cases, he also told the jury that as a result of those cases, the defendant could have received a sentence in excess of 100 years in prison. He gave his opinions that: (1) defendant's testimony at Lankford's trial was inconsistent with the information given to the court on March 6, 1989, when defendant entered his plea of guilty; and (2) during defendant's testimony in the Lankford trial, defendant "acted like he didn't want to be there," he appeared nervous, and his manner was "cavalier."

Although portions of the trial judge's testimony were admitted to identify the issues raised and decided in the former trial, we see no reason why the prosecution could not have proven the same facts with other evidence. And, as to the issue of whether defendant's trial testimony was inconsistent with his earlier testimony at the hearing in which he entered his guilty plea, the best evidence would have been a transcript of the two proceedings. *See People v. Tippett, supra.* We also agree with defendant that the trial judge's testimony regarding defendant's attitude and demeanor was irrelevant because it had nothing to do with his prosecution for perjury.

Nevertheless, we conclude there was no plain error because there is no reasonable probability that the error in allowing irrelevant testimony contributed to the verdict. Most of the trial judge's testimony involved uncontested matters. Further, the evidence of the defendant's guilt was overwhelming. Not only did the state's evidence establish that the defendant had lied on the witness stand, but the defendant himself admitted this, and relied solely upon the defense of duress. Under these circumstances, we conclude there was no plain error.

## IV.

■ Defendant next contends the cumulative effect of the evidence concerning the burglary and sexual assault deprived him of a fair trial by establishing that he had committed crimes other than the perjury offense for which he was on trial. Again, we disagree.

Here, before the victim of the sexual assault testified, the defendant objected on the grounds that evidence of the earlier offenses was not relevant and would be unfairly prejudicial to him. The trial court overruled defendant's objection but instructed the prosecutor not to elicit details of the sexual assault. Further, the trial court instructed the jury that the defendant's prior convictions could only be considered in assessing his credibility as a witness.

■ We agree with the People that the earlier offenses were inextricably inter-

twined with the perjury because the perjury arose from Lankford's trial on those charges. Moreover, the basis of the alleged perjured testimony by defendant involved the issue of whether Lankford had in fact participated in the sexual assault and burglary with the defendant. Thus, the victim's testimony about the prior offense was relevant to the jury's understanding the significance of the perjured statements and to the jury's determination of whether the defendant's statements were false.

■ Additionally, to the extent that the evidence of the earlier offense aided the jury in understanding the context in which the perjury occurred, it was proper as *res gestae* evidence. *See People v. Czemerynski*, 786 P.2d 1100 (Colo.1990).

Under these circumstances, even assuming, *arguendo*, that there was error, we again conclude the error was harmless because the evidence of defendant's guilt here was overwhelming. *See People v. Roy*, 723 P.2d 1345 (Colo.1986).

### V.

■ Finally, we reject the defendant's contention that the evidence was insufficient to prove beyond a reasonable doubt that his false statement at Lankford's trial was material.

If the sufficiency of the evidence is raised on appeal, this court must determine whether the evidence, when viewed as a whole, and in the light most favorable to the prosecution is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. The determination of the credibility of witnesses is solely within the province of the fact-finder. *See Kogan v. People*, 756 P.2d 945 (Colo.1988).

■ One element of first degree perjury is making a "materially false statement." Section 18–8–502(1), C.R.S. (1986 Repl. Vol. 8B). The statute defines "materially false statement" as "any false statement ... which could have affected the course or outcome of an official proceeding, or the action or decision of a public servant, or the performance of a govern-

mental function." Section 18–8–501(1), C.R.S. (1986 Repl. Vol. 8B). Thus, the relevant standard is whether the false testimony could have affected the outcome of the trial.

Here, a critical issue in Lankford's trial was identity; that is, whether Lankford was a perpetrator of the offense. Thus, defendant's testimony was material to a key issue in the case, *Papas v. People*, 98 Colo. 306, 55 P.2d 1330 (1936), and the trial court did not err in finding sufficient evidence to prove materiality under the statute.

We find defendant's other contentions to be without merit.

The judgment is affirmed.

SMITH and CRISWELL, JJ., concur.