521 P.3d 641
In re The PEOPLE of the State of Colorado, Plaintiff,
v. Belinda KNISLEY, Defendant, andConcerning: Tina Peters.
Supreme Court Case No. 22SA290 Supreme Court of Colorado.
December 19, 2022
Attorneys for Petitioner Honorable Matthew D. Barrett : Philip J. Weiser, Attorney General, Eric R. Olson, Solicitor General, Abigail M. Hinchcliff, First Assistant Attorney General, Denver, Colorado
Attorneys for Respondent Mesa County District Court: Philip J. Weiser, Attorney General, E. Lee Reichert, Deputy Attorney General, Christopher J.L. Diedrich, Senior Assistant Attorney General, Janna K. Fischer, Assistant Attorney General, Denver, Colorado
Attorneys for Respondent Tina Peters: Springer and Steinberg, P.C., Harvey Steinberg, Stephen F. Prager, Craig L. Pankratz, Denver, Colorado
No appearance on behalf of Defendant Belinda Knisley.
En Banc
JUSTICE GABRIEL delivered the Opinion of the Court, in which CHIEF JUSTICE BOATRIGHT, JUSTICE MARQUEZ, JUSTICE HOOD, JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined.
JUSTICE GABRIEL delivered the Opinion of the Court.
¶1 In this original proceeding pursuant to C.A.R. 21, we review the district court's order denying Mesa County District Court Judge Matthew D. Barrett's motion to quash a subpoena compelling him to sit for a deposition in his judicial capacity.
¶2 Because, on the undisputed facts and the record before us, we cannot conclude that Judge Barrett's testimony is necessary to the proceeding for which it is being sought, we conclude that the district court abused its discretion in compelling Judge Barrett to appear for a deposition in this case.
¶3 Accordingly, we make our rule to show cause absolute.
I. Facts and Procedural History
¶4 In February 2022, Judge Barrett presided over a hearing in a case captioned People v. Knisley , No. 21CR1312 (Dist. Ct., Mesa Cnty.). At one point during this hearing, which concerned the return on certain subpoenas duces tecum issued by the defendant in that case, Belinda Knisley, District Attorney Daniel Rubinstein asked to approach the bench. At the bench, he informed Judge Barrett that his paralegal had alerted him to the fact that Tina Peters, who was present in the courtroom and who is a defendant in a separate case over which Judge Barrett is presiding, appeared to be recording the hearing. Rubinstein then confirmed that he had "seen the screen, and indeed it's recording."
¶5 The attorneys stepped back, and Judge Barrett asked Peters if she was recording. The transcript of the hearing indicates that her response was "indiscernible." When Judge Barrett then asked her if she was broadcasting the hearing, however, she clearly responded, "No, sir."
¶6 Immediately thereafter, Deputy District Attorney Jonathan Mosher informed the court that at the time Rubinstein had first approached the bench, Mosher looked at Peters's screen and "actually saw that it was depicting what's happening in the courtroom." After asking Mosher a follow-up question, Judge Barrett had the following conversation with Peters:
THE COURT: Ms. Peters—is that Ms. Peters; that's who I was told is—that's Ms. Peters. Were you recording or not, ma'am?
MS. PETERS: No, Sir. I was not. (Indiscernible). This is a work day for me.
THE COURT: So then, did you have your video up for some reason? MS. PETERS: No.
THE COURT: So, he just completely mis-saw what was ever [sic] on your screen?
MS. PETERS: Yes. I don't need to record. This is recorded, right? I don't need to [do] that.
THE COURT: No. You don't need to do it, because there's a sign outside the door that says no recording.
MS. PETERS: I understand. You know, they're just wrong. And, if [it] makes Your Honor feel better—
....
THE COURT: Well, the bottom line is—as I mentioned, there's a sign on the door that says no recording, video, audio—it's all common sense for most folks to know that. This is a recorded proceeding in any event. So, this is the one warning that the individual in the courtroom will get. If I find that someone has violated this order in the future, then I'll take appropriate action, and it will be appropriate—no doubt in my mind about that.
Judge Barrett then directed the parties back to the subject matter of the hearing.
¶7 Later in the hearing, after returning from a recess, Judge Barrett made the following pertinent findings:
I'll begin by noting that previously—it had come to the Court's attention that someone may have been recording in the courtroom. I do not find one way or another as to whether that person was recording, or broadcasting, or audio recording—video recording[,] whatever it may have been. That individual told me that they were not doing any of those three things.
So, I relied on that representation in not entering any type of action at that time. If I had known if it had been confirmed I would have done something differently, and that's in-part, because there is a decorum order that I entered in this case back on September 8th. ... My decorum order says this—no one is authorized to record any portion of the Court's proceedings via audio or—or video, and that, of course, would encompass broadcasting of the same. So, I make that additional record.
¶8 A few weeks later, the People filed a verified motion for an order directing the issuance of a citation commanding Peters to show cause why she should not be held in contempt for dishonesty to the court when she answered the court's questions as to whether she was recording the proceedings. In support of this motion, the People referenced and attached affidavits from the paralegal who had first informed Rubinstein of the alleged recording at issue and from a witness asserted to have been sitting next to Peters at the hearing. The motion indicated that according to the latter witness, Peters had later admitted that she had, in fact, been recording the hearing.
¶9 The day after the People filed this verified motion, Judge Barrett issued a written order titled, "ACTION TAKEN: Verified Mot [sic] for contempt—Peters." In this order, Judge Barrett concluded, "out of an abundance of caution only," that the verified motion should be referred to, and if necessary be heard by, a separate judicial officer. Judge Barrett further indicated that he was referring the motion for reassignment, in part, because he "may be a peripheral witness to some of the alleged conduct." He reiterated, however, that he "never found that Ms. Peters was, or was not, engaging in the act of videotaping," nor could he, because he "did not observe it." Accordingly, Judge Barrett never passed judgment on the veracity of either Peters's or the People's representations.
¶10 Thereafter, the verified motion was assigned to Judge Lance Timbreza. After reviewing the transcript of the hearing, as well as the verified motion and attached affidavits, Judge Timbreza directed the issuance of a citation "as to why Peters should not be found to be in indirect contempt ... for being dishonest to the court." Judge Timbreza further ordered the parties to submit all future filings regarding the contempt action in People v. Knisley & Concerning Tina Peters, No. 22CV10 (Dist. Ct., Mesa Cnty.).
¶11 Several months later, Peters served on Judge Barrett a subpoena to appear for a deposition in the contempt action. Judge Barrett responded by filing a motion to quash the subpoena, arguing that (1) his testimony was unnecessary because the transcript of the February hearing demonstrated that he did not observe Peters's alleged conduct, while other witnesses who did observe her conduct could testify to the relevant facts; and (2) any deposition would impermissibly intrude on his mental processes.
¶12 In the interim, all of the district judges of the 21st Judicial District recused themselves from the contempt matter, and Chief Judge Paul Dunkelman of the 5th Judicial District was appointed to preside over it. As pertinent to the matter before us, Chief Judge Dunkelman ultimately denied in part Judge Barrett's motion to quash. In so ruling, the court noted that Judge Barrett had made a clear record that (1) "he did not observe Ms. Peters recording, broadcasting or audio recording the proceedings" and (2) he had "interpreted Ms. Peters’ response to him as denying that she was recording the proceedings." Nevertheless, the court agreed with Peters that the record did not capture "the tone, demeanor or attitude of Ms. Peters or how her conduct may have offended the dignity of the Court." On those issues, the district court opined that "there may be information and knowledge that no other person other than Judge Barrett has."
¶13 The court thus concluded that although "[i]t is a difficult inquiry to balance the public policy against deposing a judge with the rights of Ms. Peters and the potential prejudice to her," there were "areas where this balance supports a limited deposition of Judge Barrett." Accordingly, the court found that Judge Barrett could be deposed, although the court limited the scope of the deposition "to ensure it [would not be] undertaken in an investigatory manner or as part [of] a fishing expedition ...." In permitting such a limited deposition to take place, the court hastened to add that it was "making no determination as to whether Judge Barrett is a necessary witness."
¶14 Notably, based on Peters's representations that she did not seek to examine or question Judge Barrett on his mental processes or "about why he made any particular decision, including whether or not to hold her [in] contempt," the district court's order stated that the parties had agreed "that Judge Barrett's mental processes are not subject to discovery." Judge Barrett, however, came to believe, based on Peters's counsel's later representations, that Peters did, in fact, "plan to delve into large areas of Judge Barrett's mental processes." Judge Barrett thus filed a motion for a protective order, requesting that the district court limit his deposition to written questions only or, in the alternative, impose additional limitations as to how the deposition would proceed. In this motion, Judge Barrett expressed concern that any inquiry into his mental processes would create "a significant risk of interference" with Peters's separate criminal case, over which Judge Barrett is presiding.
¶15 Peters filed a response in which she generally denied Judge Barrett's allegations as to her intent. She stated, however, that in her view, "Judge Barrett's opinions on [her] credibility [were], in fact, wholly appropriate lines of inquiry." In support of this assertion, she cited the Colorado Code of Judicial Conduct, which states, in pertinent part, "A judge shall not testify as a character witness in a judicial ... proceeding ... except when duly summoned ." C.J.C. 3.3 (emphasis added).
¶16 The district court ultimately denied Judge Barrett's request to limit his deposition to written questions, but it did impose additional restraints on the deposition, including limiting the length of the deposition to one hour, ordering the deposition to occur on a specific date over the lunch hour, and permitting the deposition to be video recorded.
¶17 Five days later—on the morning the deposition was scheduled to occur—Judge Barrett filed in this court a petition under C.A.R. 21, seeking immediate relief from the district court's orders (1) permitting the deposition to proceed and (2) denying his motion for a protective order. We issued a rule to show cause.
II. Analysis
¶18 We begin by discussing our jurisdiction to hear this matter and the applicable standard of review. We then proceed to review the pertinent limitations on judicial testimony, and we apply those principles to conclude that, on the undisputed facts and the record before us, the district court abused its discretion in compelling Judge Barrett to appear for a deposition in this case.
A. Original Jurisdiction and Standard of Review ¶19 The exercise of our original jurisdiction under C.A.R. 21 is a matter that rests within our sole discretion. Rademacher v. Greschler, 2020 CO 4, ¶ 20, 455 P.3d 769, 772. "An original proceeding under C.A.R. 21 is an extraordinary remedy that is limited both in its purpose and availability." Id. Among other things, we have exercised our jurisdiction under C.A.R. 21 when an appellate remedy would be inadequate and when a party might suffer irreparable harm absent C.A.R. 21 relief. Id. ¶20 Here, the harm to Judge Barrett could not be cured by an appeal in the ordinary course because (1) the damage would occur at the time he was required to provide deposition testimony and (2) Judge Barrett is not a party to a case in which he could file an appeal. Accordingly, we deem it appropriate to exercise our discretion under C.A.R. 21 to hear this matter. ¶21 We review a district court's discovery orders, including orders modifying or enforcing subpoenas, for an abuse of discretion. Fox v. Alfini, 2018 CO 94, ¶ 17, 432 P.3d 596, 600 ; see also People v. Spykstra, 234 P.3d 662, 664, 666 (Colo. 2010) (reviewing for an abuse of discretion a district court's order denying a motion to quash, and modifying and enforcing, two subpoenas duces tecum). "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." People v. Johnson, 2021 CO 35, ¶ 16, 486 P.3d 1154, 1158 (citations omitted).
B. Judicial Testimony
¶22 Both the Colorado Rules of Evidence and the Colorado Code of Judicial Conduct proscribe judicial testimony in certain circumstances. See, e.g., CRE 605 ("The judge presiding at the trial may not testify in that trial as a witness."); C.J.C. 3.3 ("A judge shall not testify as a character witness in a judicial, administrative, or other adjudicatory proceeding or otherwise vouch for the character of a person in a legal proceeding, except when duly summoned."). ¶23 No Colorado statute or ethical rule, however, prohibits a judge from testifying as a witness in a case that is not on trial before that judge. People v. Tippett, 733 P.2d 1183, 1193 (Colo. 1987) ; People v. Drake, 841 P.2d 364, 368 (Colo. App. 1992). Nonetheless, when addressing the relatively rare circumstance in which a judge is summoned to testify, we have recognized that it is contrary to public policy for a judge to be called as a witness to state the grounds on which that judge decided a previous case. Tippett , 733 P.2d at 1194 (citing Noland v. People, 33 Colo. 322, 80 P. 887, 888 (1905) ). This is because, as the Supreme Court put it, examining a judge's mental processes "would be destructive of judicial responsibility." United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) ; accord Hadley v. Moffat Cnty. Sch. Dist., 681 P.2d 938, 944 (Colo. 1984).
¶24 We have further observed that when the record of a judgment is the best evidence, the judgment cannot be proved by parol evidence, such as the testimony of the judge who entered that judgment, and such testimony would be inadmissible to contradict or vary the terms of the judgment. Tippett, 733 P.2d at 1194. When the record is ambiguous, however, the judge's testimony may be admissible "to identify the issues raised and decided in a former trial." Id. ¶25 Colorado appellate courts have made clear that this rule, too, has its limits. Thus, in Drake, 841 P.2d at 368, a division of our court of appeals reasoned that "given the weight to which a jury might accord [a judge's testimony] and given the judge's other duties," the practice of requiring a judge to testify regarding matters arising in a trial over which the judge previously presided should be "sparingly used and only when the proponent of the evidence shows that the judge's testimony is not only relevant but also necessary to prove a material element of the case." ¶26 Whether a judge's testimony is "necessary," or as some courts have put it, "essential," typically comes down to whether the judge is "the only possible source of testimony" on factual information that was "highly pertinent to the jury's task." United States v. Frankenthal, 582 F.2d 1102, 1108 (7th Cir. 1978) (affirming the admission of a judge's testimony when the judge "possessed factual knowledge that was highly pertinent to the jury's task, and he was the only possible source of testimony on that knowledge"); see also Auguste v. Sullivan, No. 03-cv-02256-PAB-KLM, 2009 WL 790135, at *1-2 (D. Colo. Mar. 20, 2009) (concluding that the judicial testimony sought did "not warrant deviating from the presumption against trial testimony by a judicial officer" when, among other reasons, the plaintiff did not show that the judge was the only person who could testify about the facts at issue); United States v. Roth, 332 F. Supp. 2d 565, 568, 570 (S.D.N.Y. 2004) (adopting the standard set forth in Frankenthal and concluding that the judge's testimony at issue was not "essential" because the judge was not the only possible source of the pertinent factual knowledge), aff'd sub nom. United States v. St. John, 267 F. App'x 17 (2d Cir. 2008). ¶27 These cases have recognized that when a judge's testimony is not necessary (that is, when the judge is not the only source of the factual knowledge at issue), the only remaining pertinent "knowledge" that the judge may have and that would not be available through other sources is the judge's mental processes. See, e.g., Roth, 332 F. Supp. 2d at 570. Again, however,
the overwhelming authority from the federal courts in this country, including the United States Supreme Court, makes it clear that a judge may not be compelled to testify concerning the mental processes used in formulating official judgments or the reasons that motivated him in the performance of his official duties. Id. at 567 (collecting authorities).
¶28 We agree with the foregoing principles concerning when a judge's testimony is necessary and the impropriety of compelling a judge to testify regarding the judge's mental processes in reaching a decision or the reasons motivating the performance of the judge's official duties, and we will follow those principles here.
¶29 Having set forth the applicable law, we now turn to the specific issues presented in this case.
C. Application ¶30 Judge Barrett contends that the district court's orders requiring him to appear for a deposition conflict with the "general rule that a judge may not be deposed absent an extraordinary showing of need" because, in his view, (1) witnesses who actually saw Peters recording the proceeding could testify as to their observations, to Peters's statements to Judge Barrett, and to Peters's tone, demeanor, and attitude when she made those statements; and (2) the district court had expressly acknowledged that it had not made a determination as to whether Judge Barrett was a necessary, as opposed to just a potentially relevant, witness. Judge Barrett further expresses concern that Peters may be intending to elicit his opinions on her tone, demeanor, attitude, and credibility in order to use this information in a later motion to disqualify him from presiding over Peters's separate criminal case.
¶31 For several reasons, we agree that on the specific facts presented here, the district court abused its discretion in compelling Judge Barrett to appear for a deposition in this case.
¶32 First, we are not convinced that Judge Barrett possesses factual knowledge pertinent to the contempt charge beyond what can be found in the transcript of the hearing itself. The People allege that Peters should be held in contempt for being untruthful in her responses to Judge Barrett. Thus, the fact-finder will be tasked with determining whether Peters lied to the court when she denied recording or broadcasting the hearing. It appears undisputed, however, that Judge Barrett did not personally observe whether Peters had been recording. Accordingly, his testimony would neither corroborate nor refute the allegation that Peters was untruthful in her answers.
¶33 Second, we are unpersuaded by Peters's assertion that Judge Barrett's testimony is, nonetheless, necessary to supplement the allegedly ambiguous and incomplete transcript of the February hearing. In support of her position, Peters points to the fact that some of her responses to Judge Barrett's questions at the February hearing were noted in the transcript as having been "indiscernible." Further, she argues that the "recordings and associated transcriptions" of the hearing do not describe what was physically occurring in the courtroom; anyone's tone, demeanor, or attitude during the hearing; or what effect Peters's conduct had on "the tenor of the proceedings."
¶34 In its order denying Judge Barrett's motion to quash, however, the district court, at least implicitly, rejected Peters's argument regarding problems with the record, noting that although there were "portions of the transcripts that are indiscernible, Judge Barrett made it clear that he interpreted Ms. Peters’ response to him as denying that she was recording the proceedings." Moreover, our own review of the record reveals that Peters expressly (and discernibly) denied recording or broadcasting the hearing more than once, and she admits that when asked if she was recording, she said that she was not doing so. Accordingly, we cannot discern how problems with the record here would render Judge Barrett a necessary witness.
¶35 Third, even if the transcript of the hearing did not capture anyone's tone, demeanor, or attitude, we do not see how this would render Judge Barrett a necessary witness in this case. The People allege that Peters obstructed the administration of justice when she recorded the proceedings, caused the court to pause the proceedings to address her alleged misconduct, and was untruthful during her discussion with the court regarding the recording. None of these allegations rely on an assertion that Peters obstructed the administration of justice through her tone, demeanor, or attitude. Accordingly, we do not agree that Judge Barrett's testimony on Peters's tone, demeanor, or attitude is necessary in this case.
¶36 In so ruling, we acknowledge that in Drake, 841 P.2d at 368, the division stated in dicta that a "judge may be called to clarify an ambiguous record, for example, in a contempt or disciplinary proceeding where an individual's attitude and demeanor may not be reflected by the bare record." For the reasons just stated, however, we are not persuaded that Judge Barrett's testimony regarding Peters's attitude or demeanor in this case would be necessary to clarify the available record.
¶37 Fourth, even if Peters's tone, demeanor, or attitude were somehow relevant to the allegations of contempt (an issue that we need not—and do not—decide), it appears undisputed that numerous other people who were present in the courtroom could testify to these issues. Specifically, Rubinstein, Mosher, their paralegal, and the witness who sat next to Peters on the day of the hearing all could testify regarding Peters's actions and her statements to Judge Barrett when he asked whether she was recording or broadcasting the hearing. In addition, Knisley, her counsel, and Peters presumably could all testify to some or all of these matters. Accordingly, Judge Barrett is not the only possible source of testimony on matters pertinent to the contempt charge, and therefore, his testimony is neither necessary nor essential here. See, e.g., Frankenthal, 582 F.2d at 1108 ; Roth, 332 F. Supp. 2d at 568. ¶38 On this point, the district court did not find otherwise. To the contrary, the court expressly stated that it was "making no determination as to whether Judge Barrett is a necessary witness." Absent such a finding, however, we believe that compelling Judge Barrett to appear for a deposition was an abuse of discretion. See Drake, 841 P.2d at 368.
¶39 Finally, Judge Barrett's concerns regarding the potential for an improper examination into his mental processes appear well founded. As noted above, Peters has expressly stated that she believes that it would be appropriate for her to inquire into Judge Barrett's opinions of her credibility. Such an examination would be particularly inappropriate here, however, because Peters could seek to use Judge Barrett's response to such an inquiry to attempt to disqualify him from presiding over her criminal case (e.g., on the grounds of impropriety, partiality, or bias). And she could do so even though Judge Barrett proactively sought to avoid this potentiality by voluntarily recusing himself from the contempt matter.
¶40 Judge Barrett's concern as to the possible misuse of his deposition is not merely hypothetical. Peters has already filed a motion to disqualify Judge Barrett in the criminal case because, in her view, (1) Judge Barrett has allegedly manifested an attitude of hostility and ill will against her and her counsel and (2) his "impartiality may reasonably be questioned" by means of his "involvement and disqualification" in the contempt proceeding. Indeed, as to the latter point, Peters has already argued that "Judge Barrett's status as a potential witness in contempt proceedings against Ms. Peters, although not automatic grounds for disqualification, is concerning." To the extent, as Judge Barrett suggests, Peters is seeking his deposition, at least in part, to explore his mental processes for use in further support of her efforts to disqualify him from presiding over her criminal case, such a deposition would far exceed the narrow grounds on which judicial testimony has heretofore been deemed permissible. See, e.g., Tippett, 733 P.2d at 1194 ; Hadley, 681 P.2d at 944 ; Drake, 841 P.2d at 368.
III. Conclusion
¶41 For these reasons, we conclude that the district court abused its discretion in denying Judge Barrett's motion to quash the subpoena directed to him and in compelling him to appear for a deposition in Peters's contempt proceeding. We therefore make our rule to show cause absolute.