23CA1039 Peo v Galvan 02-12-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1039
Adams County District Court No. 22CR830
Honorable Kyle Seedorf, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Joseph Anthony Galvan,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Moultrie and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Daniel J. Sequeira, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    After a domestic incident between defendant, Joseph Anthony Galvan, and his wife, a jury convicted Galvan of menacing and false imprisonment. Galvan appeals his convictions, arguing that the trial court reversibly erred by admitting (1) generalized expert witness testimony; (2) Microsoft Teams messages; and (3) prior act evidence. Because we disagree, we affirm the judgment of conviction.

## I.    Background

¶ 2    One spring afternoon, Galvan's wife, the victim, called 911. Though the victim didn't speak to the dispatcher, she left the line open, and the dispatcher heard a man — later identified as Galvan — being "verbally aggressive" and a woman screaming and crying. During the call, Galvan demanded the victim's phone and said, "I'm done, they can come see your dead body." While the 911 call was ongoing, the victim also sent Microsoft Teams messages to her coworker, Kelly Kohut, saying, "[P]lease send cops to my house asap address on file," and "[H]usband is trying to kill me." Kohut arranged for another coworker to call 911 for the victim. The victim also called her brother and told him that Galvan had a knife and was threatening to kill her.

¶ 3    Officers responded and knocked on the doors and windows of the home for roughly ten minutes.  The victim eventually opened the door and told them that Galvan had prevented her from answering, threatened to kill her, and cut her foot with a kitchen knife.  The officers observed small cuts on her foot.

¶ 4    The prosecution ultimately charged Galvan with menacing, false imprisonment, third degree assault, and violation of a protection order.  At the preliminary hearing, although the victim recanted, saying she made up the allegations and received the cuts from their pets, the court found probable cause to proceed and continued the victim's trial subpoena.

¶ 5    At trial, the victim failed to appear.  The prosecution introduced the 911 call, and the jury heard testimony from the responding officers, the victim's brother, and her coworker.  Galvan didn't testify.  His counsel defended on the theory that Galvan was having a mental health crisis and threatening to kill himself, not the victim.

¶ 6    The jury acquitted Galvan of the assault charge but found him guilty of menacing and false imprisonment.[1]  The trial court sentenced Galvan to a controlling three year prison sentence.

## II.    Expert Witness Testimony

¶ 7    Galvan contends that the trial court erred by allowing an "unqualified" domestic violence expert to provide "unreliable, irrelevant, and bolstering" testimony.  Galvan also argues that the expert's testimony violated the court's order limiting its scope.  We aren't persuaded.

## A.    Additional Background

¶ 8    Before trial, the prosecution endorsed Sandra Campanella as a generalized expert witness in domestic violence.  Galvan moved to exclude Campenella's testimony under CRE 702 and CRE 403 and requested a hearing under *People v. Shreck*, 22 P.3d 68 (Colo. 2001).  The trial court denied Galvan's motion to exclude Campanella and his request for a *Shreck* hearing.  It found that Campanella was qualified to testify about domestic violence; her

---

[1] In exchange for the dismissal of the violation of a protection order charge, Galvan pleaded guilty to attempt to violate a protection order.

testimony about the cycle of violence, power and control, and victim recantation would be helpful to the jury; and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice or other Rule 403 concerns. The court, however, prohibited Campanella from testifying about (1) "why victims stay in domestic violence relationships"; (2) delayed reporting; and (3) stalking dynamics.

¶9    At trial, the court qualified Campanella "in the generalized area of domestic violence." Campanella then testified about the power and control dynamics of a domestic violence relationship, the cycle of violence, why a victim might call 911, and why a victim might not testify at trial. As part of that last topic, and with no objection from defense counsel, the prosecution and Campanella had the following exchange:

> Q. How common is it for a victim to fail to appear to testify?
>
> A. It's very common. So that's one of those dynamics that occur following an arrest. So statistically speaking, victims whose abuser[s] have been arrested and are involved in the criminal process, approximately [seventy] to [eighty-five] percent of . . . those victims will recant, which is to take back the whole thing like it never happened or minimize. "It was no

4

big deal. I wasn't scared. I fell. It was my fault," or say flat out "It didn't happen" or to absen[t] themselves from the process. So they dodge subpoenas or even if they are under service, they just don't show up. So our average [seventy] to [eighty] percent of all domestic violence cases, where there is an arrest, will have victims that will exhibit those protective behaviors to help get the abuser out of trouble.

### B.     Legal Principles and Standard of Review

¶ 10     Expert witness testimony is governed by Rule 702 and is admissible when (1) the scientific principles at issue are reasonably reliable; (2) the expert is qualified to offer the testimony; (3) the testimony is helpful to the jury; and (4) the testimony's probative value is not substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. *People v. Cooper*, 2021 CO 69, ¶ 47; *see* CRE 702, 403.

¶ 11     "We review a trial court's admission of expert testimony for an abuse of discretion and will reverse only when that decision is manifestly erroneous." *Cooper*, ¶ 44 (citation omitted).

## C.    Campanella Was Qualified

¶ 12    We first reject Galvan's claim that the court abused its discretion by qualifying Campanella as an expert in domestic violence.

¶ 13    An expert witness is not required to hold a "specific degree, training certificate, [or] accreditation." *Huntoon v. TCI Cablevision of Colo., Inc.*, 969 P.2d 681, 690 (Colo. 1998).  Rather, a witness may be qualified to offer expert testimony based on any one, or more, of the five factors in Rule 702 — knowledge, skill, experience, training, or education.  *Id.*  Indeed, experience alone is sufficient to qualify a witness as an expert.  *Salcedo v. People*, 999 P.2d 833, 838 (Colo. 2000); *see Kutzly v. People*, 2019 CO 55, ¶ 17.

¶ 14    Campanella testified that she had decades of experience in domestic violence investigations and was currently a member of a domestic violence response team.  She detailed specific domestic violence trainings that she had received, including training in "domestic violence dynamics, victim behavior, [and] offender tactics."  She testified about her membership in professional organizations and a task force related to domestic violence.  She testified that she had given domestic violence trainings to multiple

6

organizations.  And she confirmed that she has been qualified more than a dozen times to testify as a domestic violence expert.  Over Galvan's unexplained objection "under [CRE] 702 and 703," the court qualified Campanella "in the generalized area of domestic violence."

¶ 15　　Despite her considerable specialized training and experience in domestic violence, Galvan maintains that Campanella was "not a qualified expert."  But his arguments amount to nothing more than criticisms about how Campanella gained her experience and complaints about her lack of specific degrees, credentials, and publications.  Because experience and training are sufficient to qualify an expert, *see* CRE 702, Galvan's complaints go to the weight of Campanella's testimony, not its admissibility, *see People v. Lehmkuhl*, 117 P.3d 98, 104 (Colo. App. 2004) (observing that when an expert lacks certain additional qualifications within a field of expertise, such deficiency goes to the weight of the expert's testimony).

¶ 16　　To the extent Galvan contends Campanella was unqualified because her professional work is centered on domestic violence victims and her past testimony has been exclusively for the

prosecution, those attributes again go to the weight of her testimony. But even beyond that, Campanella's specialized *training* in domestic violence dynamics wasn't limited to domestic violence victims.

¶ 17    Galvan also questions Campanella's reliability because she didn't testify to how she obtained the data about the percentage of domestic violence victims that recant their stories. But Galvan didn't raise this objection at trial. And because an expert may testify without stating the underlying basis for an opinion, CRE 705, we don't see how the court erred by allowing it, *see People v. Ramirez*, 155 P.3d 371, 379-80 (Colo. 2007) ("[A]n expert's failure to state the basis for an opinion does not of itself render the testimony unreliable or otherwise inadmissible . . . .").

¶ 18    For all these reasons, we conclude that the court didn't abuse its discretion by qualifying Campanella as an expert in the generalized area of domestic violence.[2]

---

[2] Galvan also suggests that Campanella's "background as a police officer and current role as a district attorney advisory witness warrant special consideration." Because he fails to elaborate on what this might entail or to develop the argument, we do not consider it. *See People v. Liggett*, 2021 COA 51, ¶ 53, *aff'd*, 2023 CO 22.

### D. Campanella's Testimony Was Relevant and Not Unfairly Prejudicial

¶ 19    We next consider Galvan's argument that Campanella's testimony about victim recantation was irrelevant and unfairly prejudicial.[3]

¶ 20    Though unaddressed by the parties, we are not persuaded that this issue is preserved. To be sure, Galvan moved to exclude Campenella's testimony before trial. With respect to the proposed victim recantation testimony, Galvan initially argued that nothing indicated the victim had recanted.

¶ 21    That of course changed at the preliminary hearing when the victim expressly recanted. Because nothing suggested that the victim wouldn't appear at trial, and the victim had recanted, the court ruled that Campanella's testimony about victim recantation was relevant and fit the facts known at that time. But when the victim failed to appear at trial, Galvan did not renew his objection to Campanella's victim recantation testimony. Because the specific objection that Galvan now raises was never presented to the trial

---

[3] The court also found Campanella's testimony about the cycle of violence and power and control relevant and not unduly prejudicial. Galvan doesn't appear to challenge this ruling.

court, we review for plain error. *See Uptain v. Huntington Lab, Inc.*, 723 P.2d 1322, 1330-31 n.9 (Colo. 1986) (suggesting that the failure to object at trial when there is "a ground different from the grounds articulated in a preliminary motion in limine" fails to preserve "the new basis for opposing admission of the evidence"); *see also Bondsteel v. People*, 2019 CO 26, ¶ 28 ("If . . . facts and circumstances have changed by the time of trial such that a defendant will have had new arguments . . . then a defendant's failure to raise such new arguments would risk a finding on appeal that those arguments were unpreserved.").

¶ 22    With respect to relevance, a generalized expert's testimony is helpful if it "fits a case" by having a sufficient logical connection to the factual issues. *Cooper*, ¶ 52. But "each aspect of such testimony need not match a factual issue." *Id.* at ¶ 53.

¶ 23    Though under a subpoena, the victim did not appear at trial. The court judicially noticed the fact that, "[the victim] was ordered to appear . . . at the outset of this trial and that she did not appear." Campanella's recantation testimony was in response to a question about why victims might fail to appear at trial. And Campanella defined recantation to include when victims "absen[t]

themselves from the process" and other "protective behaviors." Indeed, Campanella included failing to show up when under service as an example of recantation. Because that testimony "fit" the facts of this case, we see no error — let alone plain error — in its admission. *See id.* at ¶ 53 (noting that the "fit inquiry must be flexible").

¶ 24 And while Galvan attacks the relevance of Campenella's statistical testimony about victim recantation because "it has no relation to the facts of the case," a generalized expert's testimony needn't perfectly match the facts of the case. *See id.* Because a generalized expert "seeks to inform the jury about generic concepts or principles without knowledge of the facts, it is almost inevitable that parts of such testimony will not be logically connected to the case." *Id.*

¶ 25 Nor are we persuaded that the probative value of the testimony was significantly outweighed by unfair prejudice or other improper considerations. Contrary to Galvan's assertion, Campanella did not testify that "it was statistically very likely that [the victim] recanted." Campanella offered no testimony about the victim, Galvan, or the facts of the case. Rather, she limited her testimony to a general

11

discussion of domestic violence dynamics, power and control, and why a victim might not appear at trial. Nothing in the generalized testimony invited the jury to base its decision on an improper basis such as sympathy, contempt, or horror, *see People v. Forgette*, 2021 COA 21, ¶ 54, *aff'd in part and vacated in part*, 2023 CO 4, or raised collateral issues that would confuse or mislead the jury, *see* CRE 403.[4]

¶ 26 We therefore conclude that the court did not abuse its discretion by finding that Campanella's testimony was relevant and not unfairly prejudicial.

E. Campanella Didn't Improperly Bolster the Victim's Credibility

¶ 27 Galvan next claims that Campanella's testimony about the percentage of domestic violence victims that "will recant" improperly bolstered the victim's credibility.

¶ 28 Because Galvan never objected to the statistical testimony, we review for plain error. *People In Interest of J.R.*, 2021 COA 81, ¶ 17.

---

[4] In cross-examination, defense counsel asked Campanella about a separate statistic related to false reporting. To the extent Galvan now says that testimony was unfairly prejudicial, defense counsel invited that testimony. *See People v. Zapata*, 779 P.2d 1307, 1309 (Colo. 1989) ("[A] party may not complain on appeal of an error that he has invited or injected into the case.").

¶ 29    A generalized expert witness may not bolster the credibility of a victim by implying that they are telling the truth, *Cooper*, ¶ 95, nor is statistical testimony that bears on a victim's credibility proper, *People v. Marx*, 2019 COA 138, ¶ 22.  In *Marx*, a child sexual assault case, a prosecution expert testified that only "[two] to [six] percent" of children or teenagers fabricate sexual assaults.  *Id.* at ¶ 8.  The division concluded that such testimony improperly bolstered the victim's credibility.  *Id.* at ¶ 19.  And that holding makes sense, as the testimony essentially told the jury that there was an infinitesimal chance that the child victim was not telling the truth.

¶ 30    That's different from Campanella's testimony.  While Campanella did provide statistics about recantation, Galvan doesn't explain how testimony that a victim *recants* implies anything about whether the initial allegations are true.  After all, as Galvan's defense counsel elicited in cross-examination, people falsely report crimes.  That someone recants an allegation doesn't make it more or less likely that the original allegation was true or false.  And to the extent that Campanella's testimony may have incidentally bolstered the credibility of the prosecution's witnesses, that doesn't

make it improper. *See People v. Relaford*, 2016 COA 99, ¶ 30 ("[E]xpert testimony generally tends to bolster or attack the credibility of another witness." (citation omitted)).

¶ 31 At the very least, we cannot conclude that the recantation statistic was so obviously improper that the trial court should have sua sponte intervened and struck the testimony.

¶ 32 We therefore conclude that the court did not err by allowing Campanella's testimony.

### F. Campanella's Alleged Violation of the Court's Order Wasn't Plain Error

¶ 33 Finally, Galvan complains that approximately ten lines of Campanella's testimony violated the trial court's order precluding testimony about why domestic violence victims delay reporting and stay in abusive relationships.

¶ 34 Even if we assume that some small portion of Campanella's testimony went beyond the pretrial order, Galvan didn't object to the violations at trial. Thus, the contention is unpreserved. *See J.R.,* ¶ 17; *see also People v. Dinapoli,* 2015 COA 9, ¶ 19 ("[W]hen a party violates the court's pretrial order at trial, the opposing party

14

must contemporaneously object to preserve the issue for appeal.").
We review unpreserved claims for plain error. *J.R.*, ¶ 17.

¶ 35    Though Galvan asserts that the testimony "gave the jury a reason to impose a verdict based on the cycle of violence and [the victim's] apparent fear and need for retribution," the court expressly allowed Campanella to testify about the cycle of violence and power and control dynamics. Testimony about these areas did not violate the court's order.

¶ 36    Other than that, Galvan generally theorizes that the testimony "made it more likely" that the jury convicted Galvan based on a prior incident, though he doesn't explain why, nor does he explain how that would have been obvious to the trial court. Even if the court could have made that connection, because the testimony that Galvan now complains about was brief, generic, and largely irrelevant to the charged crimes, we cannot conclude that it so undermined the trial's fundamental fairness as to cast serious doubt on the reliability of Galvan's convictions. *See People v. Drake*, 841 P.2d 364, 368 (Colo. App. 1992) ("[T]here was no plain error because there is no reasonable probability that the error in allowing irrelevant testimony contributed to the verdict."). We

conclude that the court did not plainly err by not sua sponte striking portions of Campanella's testimony.

### III.   Microsoft Teams Messages

¶ 37     Over Galvan's objection, the trial court allowed the prosecution to admit the Microsoft Teams messages between the victim and Kohut, her coworker.  Galvan claims this was error because the messages were insufficiently authenticated and contained inadmissible hearsay.[5]  Not so.

### A.   Additional Background

¶ 38     The prosecution sought to introduce an email that Kohut sent to her human resources manager that had an attached screenshot of the messages exchanged between the victim and Kohut.[6]

¶ 39     Before the exhibit was admitted, Kohut testified that she knew the victim and messaged her daily via Microsoft Teams.  Kohut

---

[5] On appeal, Galvan does not reassert his other objections to the admission of the messages.

[6] The prosecution also introduced an exhibit containing a screenshot of the same conversation, but accessed later, to show that the victim's messages had been deleted.  Though Galvan also objected at trial to the admission of that exhibit, and while he doesn't distinguish between the two on appeal, he doesn't make any arguments about the second exhibit.  We therefore consider only the admissibility of first exhibit.

16

testified that the victim sent her Teams messages on the day of the incident and described how she knew they were from the victim.

¶ 40    Kohut also testified that she saved, copied, and took a screenshot of the messages between her and the victim on the day of the incident and then emailed the screenshot to the manager. When shown the exhibit containing the email with the attached messages, Kohut confirmed that she "recognize[d]" the exhibit as the email she sent. Galvan generally objected to lack of authenticity under CRE 903 but explained that his "primary objection [wa]s under hearsay." The court overruled the objection and, as to hearsay, specifically found the victim's messages to Kohut were admissible excited utterances. Kohut then testified about the content of the exhibit and her efforts to arrange for police to respond to the victim's home.

B.    Legal Principles and Standard of Review

¶ 41    Authentication requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." CRE 901(a). The standard for authentication is "minimal — all that's required is a prima facie showing that the evidence is what its proponent claims." *Gonzales v. People*, 2020 CO 71, ¶ 42. This

17

burden is satisfied if "the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." *Id.* at ¶ 27 (citation omitted).

¶ 42    Electronic messages can be authenticated through a witness with personal knowledge testifying that the reproduction of the messages accurately reflects their content and establishing the identity of the sender. *People v. Heisler*, 2017 COA 58, ¶ 15.

¶ 43    Hearsay is generally inadmissible unless it falls within a recognized exception. CRE 803. An excited utterance — which is a statement relating to a startling event made while the declarant was under the stress of the excitement caused by the event — is such an exception. CRE 803(2). A statement may be admissible as an excited utterance if (1) the event was sufficiently startling to render inoperative the normal reflective thought processes of an observer; (2) the statement was a spontaneous reaction to the event; and (3) direct or circumstantial evidence supports an inference that the declarant had the opportunity to observe the startling event. *People v. Vanderpauye*, 2021 COA 121, ¶ 31, *aff'd*, 2023 CO 42.

¶ 44     We review evidentiary rulings for an abuse of discretion. *Gonzales*, ¶ 25.  A trial court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair.  *Id.*

C.     The Exhibit Was Properly Authenticated

¶ 45     The trial court did not abuse its discretion by concluding that Kohut's testimony was sufficient to properly authenticate the exhibit.

¶ 46     First, with respect to the messages themselves, Kohut sufficiently established that the victim sent the messages.  Kohut testified that she knew the victim and had worked with her for about six months at the time the messages were sent.  She explained that she communicated with the victim daily through Microsoft Teams.  And Kohut said that per company policy, employees are identified with their account by a display of their name, initials, and picture.  Kohut additionally explained that employees were required to complete a "two-step verification" every time they logged in to ensure that no one else could access their account.  *See Heisler*, ¶ 16 (authenticating sender of text messages from witness recognizing sending phone number and content of messages).

¶ 47    Second, Kohut was a person with direct personal knowledge of the messages. She was both a recipient and sender of the messages. She explained that she copied, saved, and took a screenshot of the messages. And she testified that she sent the email with the attached screenshot of the messages to the manager and recognized the exhibit as the email she sent. That testimony was sufficient to allow a jury to reasonably find that the exhibit was authentic. *See Gonzales*, ¶ 27. Any doubts remaining on that point — and none were specifically raised at trial — were for the jury to resolve. *See id.* at ¶ 6; *Heisler*, ¶ 22.

¶ 48    Galvan now seems to argue that because the manager — not Kohut — produced the email with the attached messages in response to the prosecution's subpoena, Kohut could not "confirm the veracity of the messages." But Galvan did not raise this objection at trial and, in any event, Kohut testified that she received the messages, sent the email with the attached screenshot of the

messages, and confirmed that she recognized the exhibit.[7]  Because Kohut properly authenticated the evidence, questions about its completeness or veracity went to the weight of the evidence, not its authenticity.  *See Gonzales*, ¶ 27; *Heisler*, ¶ 22.

¶ 49     That holds true for the remainder of Galvan's arguments.  By way of example, Galvan says there was no testimony that the messages were complete, that the victim "actually sent" the messages, or that the messages were not modified or tampered with.  But Rule 901 doesn't require such exactitude to authenticate evidence.  *See Gonzales*, ¶¶ 27, 42 (confirming that burden to authenticate is minimal and explaining that a proponent doesn't need to "disprove any possibility of tampering" to authenticate evidence (quoting *State v. Coston*, 215 A.3d 1285, 1288 (Me. 2019))); *Heisler*, ¶ 22 (noting that the victim's deletion of text responses went to "the weight of the evidence, not its authenticity").

---

[7] To the extent Galvan now also raises some objection to the screenshot of the messages, the only trial objection to the "screenshot" involved the second exhibit that contained Kohut's responses, but not the victim's messages.  Even then, defense counsel articulated the objection as "hearsay, best evidence, [and] confrontation clause."

¶ 50    Because the prosecution met its minimal burden to authenticate the exhibit, we conclude that the trial court properly admitted it.

### D.    The Messages Were Excited Utterances

¶ 51    We also conclude that the trial court did not abuse its discretion by admitting the victim's messages as excited utterances.

¶ 52    Galvan doesn't appear to dispute that the event was startling, that the victim had the opportunity to observe it, or that the victim's messages were spontaneous. *See Vanderpauye,* ¶ 31. Rather, he says that the messages weren't "accompanied by outward signs of excitement or emotional distress." But it is the *event* that must be startling, not necessarily the *statement. Id.* at ¶ 32; *see* CRE 803(2).

¶ 53    Regardless, a written message itself doesn't necessarily convey tone or tenor. And the content of the messages — that the victim's husband was trying to kill her and to send police "asap" — is both startling and conveys emotional distress. *See People v. Ray*, 2025 CO 42M, ¶ 103 (determining that victim being told he was going to be killed was sufficiently startling). And the victim's distress is

corroborated by the contemporaneous 911 call during which she can be heard screaming and crying.

¶ 54 While true that — as Galvan points out — the victim had to complete a two-step verification to send the messages, we are unpersuaded that this fact precluded the messages from being excited utterances or "show[ed] a calmness and presence of mind" that negated the stress of Galvan's threats to kill the victim.

¶ 55 Because we conclude that the court properly admitted the messages as excited utterances, we don't consider whether the messages were also admissible under the present sense impression hearsay exception. *See Kelly v. Haralampopoulos*, 2014 CO 46, ¶ 43 n.9.

## IV. Prior Act Evidence

¶ 56 Over Galvan's objection, the trial court allowed the prosecution to admit body camera video that contained a casino surveillance video appearing to show Galvan shoving, kneeing, and biting the victim a year before the charged crimes. The court admitted the video with a limiting instruction, allowing the jury to consider it for Galvan's knowledge and motive. Galvan argues that

23

the court erred by admitting the video under CRE 404(b). We disagree.

### A. Legal Principles and Standard of Review

¶ 57 Evidence of other crimes or acts is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." CRE 404(b)(1). But such evidence is admissible for nonpropensity purposes, including to show knowledge and motive. *Rojas v. People*, 2022 CO 8, ¶ 28; CRE 404(b)(2).

¶ 58 To be admissible under Rule 404(b), other act evidence "must be (1) logically relevant (2) to a material fact (3) independent of the prohibited inference of the defendant's bad character, and (4) the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice." *Rojas*, ¶ 27.

¶ 59 Specific to domestic violence, section 18-6-801.5(2) and (3), C.R.S. 2025, authorizes courts to admit "evidence of any other acts of domestic violence between the defendant and the victim" to show "a common plan, scheme, design, identity, modus operandi, motive,

24

or guilty knowledge or for some other purpose."[8] *See People v. Cross*, 2023 COA 24, ¶ 16.

¶ 60    We review the admission of other act evidence for an abuse of discretion. *People v. Lancaster*, 2022 COA 82, ¶ 37.

### B.    The Video Was Admissible

¶ 61    Though Galvan broadly claims the court "misapplied" the relevant factors when assessing the admissibility of the video, we disagree.

¶ 62    The trial court found that the video was logically relevant to establish the material facts of Galvan's knowledge and motive for the charged crimes. Evidence of Galvan attacking the victim in the past tended to make it more probable that he knew that threatening to kill her would place her in fear of imminent serious bodily injury, a material element of the criminal menacing charge. *See* § 18-3-206, C.R.S. 2025; *see also People v. Spoto*, 795 P.2d 1314,

---

[8] Galvan claims that the trial court didn't consider section 18-6-801.5, C.R.S. 2025. That's incorrect. Before trial, a district court judge specifically found the evidence admissible under the statute. When defense counsel asked the trial judge to reconsider the video's admissibility, the trial court expressly adopted the original order that admitted the evidence under CRE 404(b) and section 18-6-801.5.

1318 (Colo. 1990) (defining logically relevant evidence as having "any tendency to make the existence of [the material fact] more probable or less probable than it would be without the evidence" (alteration in original) (quoting CRE 401)).  Likewise, material to all the charges, the video supported the prosecution's theory that Galvan was motivated by a desire to exert domination and control over the victim.  *See People v. Fry*, 74 P.3d 360, 371 (Colo. App. 2002), *aff'd*, 92 P.3d 970 (Colo. 2004) (noting that prior evidence of domestic violence "demonstrates defendant's motive and malice").  That the charged crime was not identical to the prior incident does not lessen the logical relevance of the video.

¶ 63    The court also properly found that the video's logical relevance was independent of the inference of Galvan's bad character because it tended to show Galvan's knowledge of placing the victim in fear and exerting physical control over her.  *See Cross*, ¶ 22 ("[A]cts of [the] 'defendant's violent behavior toward the same victim in an ongoing relationship' are admissible in domestic violence cases." (quoting *People v. McBride*, 228 P.3d 216, 227 (Colo. App. 2009))).

¶ 64    Finally, the court concluded that the legitimate probative value of the video to prove Galvan's mens rea was not substantially

outweighed by unfair prejudice. *See id.* at ¶¶ 25-26 (attributing probative value because "[t]he evidence showed that [the defendant's] acts of domestic violence targeting the victim were ongoing," and though the evidence was prejudicial to the defendant, it "was not unfairly so"). And to minimize any prejudice, the court gave an appropriate limiting instruction. *See Fry*, 74 P.3d at 371.

¶ 65 Although Galvan quarrels with the court's assessment of the factors, we conclude that the court correctly applied the relevant factors and didn't abuse its discretion by admitting the video.

## V. Disposition

¶ 66 The judgment is affirmed.

JUDGE MOULTRIE and JUDGE BERNARD concur.